Citation Nr: 1305225 
Decision Date: 02/13/13 Archive Date: 02/21/13

DOCKET NO. 09-46 991 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to an initial rating in excess of 20 percent for degenerative disc disease and degenerative joint disease of the thoracolumbar spine. 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

D. Van Wambeke, Counsel



INTRODUCTION

The Veteran served on active duty from October 1976 to October 1980 and from May 1983 to May 1999. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which granted service connection for degenerative disc disease (DDD) and degenerative joint disease (DJD) of the thoracolumbar spine and assigned a 20 percent rating effective February 21, 2008. 

The Board notes that the Veteran's November 2009 VA Form 9 was not timely. However, the RO included the issue of entitlement to an increased rating for DDD and DJD of the thoracolumbar spine in a January 2010 supplemental statement of the case (SSOC) and in a September 2012 VA Form 8. Given these actions by the RO, the requirement that there be a timely substantive appeal is deemed waived. Percy v. Shinseki, 23 Vet. App. 37 (2009). 

The November 2008 rating decision that is the subject of the current appeal also denied entitlement to service connection for hypertension, a heart condition, and skin cancer. The Veteran appealed the issue of entitlement to service connection for hypertension, but not the other two issues. All three of these service connection claims, however, were included in the January 2010 SSOC. Service connection was subsequently established for all three in a February 2012 rating decision. As such, none of these issues are before the Board for appellate review. 

The Veteran requested a hearing before the Board in his November 2009 VA Form 9. The RO informed the Veteran that his requested hearing had been scheduled for December 2012. See October 2012 letter. The Veteran, however, failed to report for the scheduled hearing. As the record does not indicate the Veteran has requested that the hearing be rescheduled, the Board deems the Veteran's request for a hearing to be withdrawn. 38 C.F.R. § 20.704 (2012).


FINDING OF FACT

The Veteran's DDD and DJD of the thoracolumbar spine is not manifested by forward flexion of the thoracolumbar spine of 30 degrees or less, favorable ankylosis of the entire thoracolumbar spine, or intervertebral disc syndrome (IDS) with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months.


CONCLUSION OF LAW

The criteria for an initial rating in excess of 20 percent for DDD and DJD of the thoracolumbar spine have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243 (2012).


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's duties to notify and assist

Upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction, VA is required to notify the appellant of the information and evidence necessary to substantiate the claim and the division of responsibilities in obtaining evidence. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159; Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The notice should also address the rating criteria or effective date provisions that are pertinent to the appellant's claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

In this case, the Veteran is disagreeing with the rating assigned after service connection has been granted and an initial disability rating and effective date have been assigned. Thus the service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess, 19 Vet. App. at 490; Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

VA has obtained service treatment records, assisted the Veteran in obtaining evidence, to include private treatment records, afforded the Veteran appropriate examinations to determine the severity of his disability, and afforded the Veteran the opportunity to give testimony before the Board, although he failed to appear at the scheduled hearing. All known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims file; and the Veteran has not contended otherwise. 

VA has substantially complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on the claim at this time.

Increased rating

In February 2008, the Veteran submitted a claim of entitlement to service connection, in pertinent part, for a chronic back problem. In November 2008, the RO granted service connection for degenerative disc disease and degenerative joint disease of the thoracolumbar spine and assigned a 20 percent rating, effective from February 21, 2008, the date of receipt of the claim. The Veteran has disagreed with the initial disability rating assigned. 

Disability evaluations are based upon the average impairment of earning capacity as determined by a schedule for rating disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate rating codes identify various disabilities. 38 C.F.R. Part 4. In determining the current level of impairment, the disability must be considered in the context of the whole recorded history, including service medical records. See generally 38 C.F.R. §§ 4.1, 4.2. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Where the rating appealed is the initial rating assigned with a grant of service connection, the entire appeal period is for consideration, and separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

When evaluating disabilities of the musculoskeletal system, an evaluation of the extent of disability present also includes consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment, and the effect of pain on the functional abilities. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 204-06 (1995). In other words, when rated for limitation of motion, a higher rating may be assigned if there is additional limitation of motion from pain or limited motion on repeated use of the joint. A finding of functional loss due to pain must be "supported by adequate pathology and evidenced by the visible behavior of the claimant." 38 C.F.R. § 4.40. 

Service connection for DDD and DJD of the thoracolumbar spine was granted and a 20 percent evaluation was assigned pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5243, effective February 21, 2008. See November 2008 rating decision. The Veteran contends that he is entitled to an increased rating because his back appears to be getting worse. He reports that he is unable to work a full day even sitting at his desk, that just moving to go through papers is getting more painful, and that any movement hurts. The Veteran also indicates that it hurts to drive and that although he may be able to move, it hurts. See December 2008 VA Form 21-4138; November 2009 VA Form 9. The assertions made by the Veteran are both competent and credible. See Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). 

Disabilities of the lumbar spine (other than IDS when evaluated on the basis of incapacitating episodes) are to rated under the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. These criteria are to be applied irrespective of whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the affected area of the spine, and they "are meant to encompass and take into account the presence of pain, stiffness, or aching, which are generally present when there is a disability of the spine." 68 Fed. Reg. 51, 454 (Aug. 27, 2003). Any associated objective neurologic abnormalities including, but not limited to, bowel or bladder impairment, are to be rated separately from orthopedic manifestations under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Note (1). 

In pertinent part, the General Rating Formula for Diseases and Injuries of the Spine provides a 20 percent rating for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a. 

Ratings in excess of 20 percent are provided for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine (40 percent); for unfavorable ankylosis of the entire thoracolumbar spine (50 percent); and for unfavorable ankylosis of entire spine (100 percent). Id. Ankylosis is defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. See Lewis v. Derwinski, 3 Vet. App. 259 (1992). 

38 C.F.R. § 4.71a, Note (2) provides that for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See also Plate V, 38 C.F.R. § 4.71a. 

Under the criteria governing disabilities of the lumbar spine, IDS is to be evaluated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating IDS Based on Incapacitating Episodes. This formula provides a rating of 20 percent for IDS with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent rating for IDS with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent rating for IDS with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to IDS that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a, Note (1). 

The Veteran underwent a VA spine examination in September 2008, in conjunction with his claim for service connection. His claims folder was available and reviewed. In pertinent part, the Veteran reported current chronic mid-thoracic and lower back pain that were exacerbated by sitting in one position for an extended period or attempting to lift any significant weight. He denied any current treatment, history of fatigue, decreased motion, stiffness and flareups of the condition, but did report spasms. Physical examination of the thoracic sacrospinalis revealed no spasm, atrophy, guarding, pain with motion, tenderness or weakness. Posture was pelvis tilted left and stooped and gait was antalgic with poor propulsion. There was lumbar flattening, but no kyphosis, list, lumbar lordosis, scoliosis, reverse lordosis, or thoracolumbar spine ankylosis. 

Range of motion testing revealed active and passive flexion to 40 degrees with pain beginning at 40 degrees and ending at 25 degrees; active and passive extension to 10 degrees with pain beginning and ending at 10 degrees; active and passive right lateral flexion to 25 degrees with pain beginning at 25 degrees and ending at 20 degrees; active and passive left lateral flexion to 25 degrees with pain beginning and ending at 25 degrees; active and passive right lateral rotation to 15 degrees with pain beginning at 15 degrees and ending at 10 degrees; and active and passive left lateral rotation to 20 degrees with pain beginning and ending at 20 degrees. The examiner indicated that resisted isometric movement was abnormal for all range of motion movements and that the likely cause was spasticity due to pain. The examiner also indicated that there was pain after repetitive use for all range of motion movements but no additional loss of motion on repetitive use of the joint, again for all range of motion movements. Lasegue's sign was positive on the right. 

Imaging reports of the lumbar spine were normal but imaging of the thoracic spine revealed very minimal hypertrophic changes. The Veteran was diagnosed with degenerative spine disease of the thoracic spine; degeneration of thoracolumbar intervertebral disc (degenerative disc disease); and thoracic sprain. Significant effects on the Veteran's usual occupation were noted, to include decreased mobility, problems with lifting and carrying, and pain. There were mild effects on feeding and toileting; moderate effects on chores, shopping, recreation, traveling, bathing, dressing and grooming; and severe effects on exercise and sports. 

A back (thoracolumbar spine) conditions Disability Benefits Questionnaire (DBQ) was conducted in December 2011, at which time the Veteran reported that his back condition had gotten worse since his 2008 VA examination. He complained of an almost daily sciatic problem, but denied any new trauma or accident involving his back and the use of any new medication. The Veteran reported difficulty doing his regular daily exercises, such as walking, due to pain setting in five minutes after starting. He described a daily, constant back pain at a level six out of ten in intensity and reported using Celebrex and Hydrocodone. The Veteran also reported flareups that impact the function of his thoracolumbar spine, which he described as happening every day with a pain intensity level of seven or eight out of ten. 

Range of motion testing revealed flexion to 45 degrees with objective evidence of painful motion beginning at 30 degrees; extension to 15 degrees with objective evidence of painful motion beginning at 15 degrees; and bilateral lateral flexion and bilateral lateral rotation to 20 degrees with objective evidence of painful motion beginning at 20 degrees. The Veteran was able to perform repetitive-use testing with three repetitions. Following this, the examiner indicated that post-test flexion ended at 45 degrees, extension at 15 degrees, and bilateral lateral flexion and bilateral lateral rotation at 20 degrees. The Veteran had no additional limitation in range of motion following repetitive-use testing, but did have functional loss and/or functional impairment in the form of pain on movement. There was no weakened movement, excess fatigability, incoordination, swelling, deformity, atrophy of disuse, instability of station, disturbance of locomotion, or interference with sitting, standing and/or weight-bearing. 

The examiner noted localized tenderness or pain of the thoracolumbar paraspinal muscle and guarding or muscle spasm of the thoracolumbar spine, but it did not result in abnormal gait or spinal contour. Muscle strength was 4/5 for bilateral hip flexion and 5/5 for bilateral knee extension, bilateral ankle plantar flexion, bilateral ankle dorsiflexion, and bilateral great toe extension. There was no muscle atrophy. Deep tendon reflexes were 2+ (normal) in the bilateral knees and ankles and sensory examination was completely normal. Straight leg raising test was negative on the right but positive on the left. Radicular pain or any other sign/symptom due to radiculopathy was noted to be mild intermittent pain (usually dull) in the left lower extremity. No other signs or symptoms of radiculopathy were noted. The examiner indicated that the sciatic nerve roots on the left were mildly involved. 

The examiner indicated that the Veteran had IDS of the thoracolumbar spine and that he had had incapacitating episodes over the past 12 months due to IDS. The total duration of the incapacitating episodes was noted to be at least one week, but less than two weeks. No assistive devices were used and the Veteran had no scars. 

Imaging studies revealed arthritis but no vertebral fracture. The examiner reported that the Veteran's thoracolumbar spine condition impacted his ability to work as an instructor because he has to sit down a lot when he teaches and is not allowed to do any lifting. 

Clinical records dated during the pertinent time period reference problems with the Veteran's spine only as history. These records do not document and complaints of, diagnosis of or treatment for chronic back problems from 2008 to the present. There was no evidence in the clinical records to the Veteran being prescribed any bedrest to treat IDS. There was no evidence in the clinical records to any restrictions in the Veteran's spine. 

The evidence of record does not support the assignment of a rating in excess of 20 percent for DDD and DJD of the thoracolumbar spine. This is so because the Veteran has not exhibited forward flexion of the thoracolumbar spine of 30 degrees or less. Rather, forward flexion, at worst, was 40 degrees. See e.g., September 2008 VA examination report. During the December 2011 VA examination, the Veteran was able to forward flex to 45 degrees. There is also no evidence that the Veteran exhibited favorable ankylosis of the entire thoracolumbar spine, and he cannot be considered immobile because he is able to perform range of motion testing. See Lewis, 3 Vet. App. at 259. For these reasons, the assignment of a 40 percent rating under the General Rating Formula for Diseases and Injuries of the Spine is not warranted.

There is also no evidence of incapacitating episodes of IDS having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months so as to support the assignment of a 40 percent rating under the Formula for Rating IDS Based on Incapacitating Episodes. The September 2011 VA examiner indicated that the Veteran had had at least one week, but less than two weeks, of incapacitating episodes over the past 12 months due to IDS. This is less than the amount required to support a rating in excess of 20 percent. In addition, there are no records that show that bed rest and treatment were prescribed by a physician, and the Veteran has not contended he was prescribed bed rest or that he was treated by a physician during these periods. 

Consideration has been given to any functional impairment and any effects of pain on functional abilities. The Board acknowledges that there was objective evidence of pain during range of motion testing at the time of both the September 2008 and December 2011 VA examinations. More specifically, there was pain from 25 to 40 degrees of forward flexion in September 2008 and pain from 30 to 45 degrees of forward flexion in December 2011. The Board also acknowledges that the Veteran has reported difficulties with activities of daily living and at his job. See September 2008 and December 2011 VA examination reports; December 2008 VA Form 21-4138. Lastly, the Board acknowledges that the Veteran exhibited pain with repetitive range of motion testing at the time of both examinations. 

Even if range of motion was limited by pain beyond that shown during examination, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40. In this case it does not. More specifically, there was no evidence of decreased range of motion with repetitive range of motion testing of the thoracolumbar spine during either examination and the December 2011 VA examiner specifically reported that the Veteran was still able to achieve 45 degrees of post-test forward flexion. The December 2011 VA examiner also specifically noted the absence of weakened movement, excess fatigability, incoordination, swelling, deformity, atrophy of disuse, instability of station, disturbance of locomotion, or interference with sitting, standing and/or weight-bearing, after repetitive range of motion testing. The clinical records associated with the claims file do not document any impairment in the spine other than complaints of pain. 

In light of the foregoing, the Board finds that a rating in excess of 20 percent is not warranted under 38 C.F.R. §§ 4.40 and 4.45 pursuant to the guidelines set forth in DeLuca. This is so because even taking into account the findings of pain at 30 degrees of forward flexion during the December 2011 VA examination, the Veteran was still able to forward flex to 45 degrees after repetitive range of motion testing, which is 15 degrees away from the amount needed to support a 40 percent rating under the General Rating Formula for Diseases and Injuries of the Spine. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243 (2012). 

The Board has also considered whether the Veteran manifests any associated objective neurologic abnormalities so as to warrant a separate rating under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, Note (1). The RO has assigned a separate 10 percent rating for radiculopathy of the left lower extremity effective December 20, 2011 (the date of the more recent VA examination). See February 2012 rating decision. There is no indication that the Veteran had radiculopathy of his left lower extremity prior to this date. See September 2008 VA examination. There is also no evidence of any other neurological abnormality affecting any other extremity. In the absence of any medical evidence of a diagnosis related to neurological abnormality associated with the Veteran's service-connected DDD and DJD of the thoracolumbar spine besides the already service-connected radiculopathy of the left lower extremity, the evidence of record does not support the assignment of another separate rating. 

Finally, the Board has considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. The Board acknowledges that the Veteran has reported problems at his job as a result of his thoracolumbar spine disability. However, he has not indicated that he is not employed as a result of his thoracolumbar spine disability. In the absence of such a history, or other competent evidence suggestive of unemployability due to the thoracolumbar spine disability, the Board finds Rice is inapplicable. See also Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). 

Extraschedular consideration

The rating schedule represents, as far as is practicable, the average impairment of earning capacity. Ratings will generally be based on average impairment. 38 C.F.R. § 3.321(a), (b). To afford justice in exceptional situations, an extraschedular rating can be provided. 38 C.F.R. § 3.321(b).

The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. First, the RO or the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the C&P Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

The symptoms exhibited by the Veteran's thoracolumbar spine disability, to include pain and limitation of motion, are contemplated by the rating criteria (i.e., 38 C.F.R. §4.71a, Diagnostic Codes 5235-5243), which reasonably describe the Veteran's disability. Higher ratings could be assigned if more symptomatology is exhibited. Therefore, referral for consideration of an extraschedular rating is not warranted. See Thun v. Peake, 22 Vet. App. 111 (2008).


ORDER

A rating in excess of 20 percent for DDD and DJD of the thoracolumbar spine is denied. 



____________________________________________
G. A. Wasik
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs