Citation Nr: 1448573 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 10-41 008 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent for degenerative disc disease of the lumbar spine status post laminectomy L4-5.

2. Entitlement to a total disability rating for compensation purposes based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

K. Marenna, Counsel



INTRODUCTION


The Veteran served on active duty from March 1966 to March 1968.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada, which granted entitlement to service connection for degenerative disc disease of the lumbar spine status post laminectomy L4-5.

The case was previously before the Board in February 2014 wherein the Board denied the Veteran's increased rating claim. The Veteran appealed the Board's decision to the U.S. Court of Appeals for Veterans Claims (Court). In September 2014, his representative and VA's Office of General Counsel, representing the Secretary of VA, filed a Joint Motion requesting that the Court vacate the Board's decision and remand the case for readjudication in compliance with directives specified. The Court issued an order that same month, granting the Joint Motion, and returned the case to the Board.

As noted in the Joint Motion, in Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009), the Court held that entitlement to a total disability rating based upon individual unemployability (TDIU) is not a separate claim for benefits, but is a component of a claim in which a claimant is seeking to obtain an appropriate disability rating. The Veteran has filed a claim for an increased rating for his service-connected degenerative disc disease of the lumbar spine and is not working. As the evidence indicates the Veteran's service-connected disability affects his ability to work, the Board finds that the issue of entitlement to a TDIU has been raised by the record, as noted in the title page.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. Prior to October 11, 2012, the Veteran's degenerative disc disease of the lumbar spine status post laminectomy L4-5 was manifested by forward flexion of the thoracolumbar spine of greater than 30 degrees; the evidence does not show objective neurologic abnormalities or incapacitating episodes.

2. From October 11, 2012, the Veteran's degenerative disc disease of the lumbar spine status post laminectomy L4-5 has been manifested by objective evidence of pain at 30 degrees on forward flexion of the thoracolumbar spine; the evidence does not show objective neurologic abnormalities or incapacitating episodes.


CONCLUSIONS OF LAW

1. Prior to October 11, 2012, the criteria for an initial rating in excess of 20 percent were not met for the Veteran's service-connected degenerative disc disease of the lumbar spine status post laminectomy L4-5. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.50, 4.59, 4.71a, Diagnostic Code 5242 (2014).

2. From October 11, 2012, the criteria for a staged, initial rating of 40 percent are met for the Veteran's service-connected degenerative disc disease of the lumbar spine status post laminectomy L4-5. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.50, 4.59, 4.71a, Diagnostic Code 5242 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions as to the appellant's claim. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2014).

Here the Veteran is appealing the initial rating assignment as to his degenerative disc disease of the lumbar spine. In this regard, because the rating decision granted the Veteran's claim of entitlement to service connection, such claim is now substantiated. His filing of a notice of disagreement as to the initial rating assigned does not trigger additional notice obligations under 38 U.S.C.A. § 5103(a). 38 C.F.R. § 3.159(b)(3). Rather, the Veteran's appeal as to the initial rating assignment here triggers VA's statutory duties under 38 U.S.C.A. §§ 5104 and 7105, as well as regulatory duties under 38 C.F.R. § 3.103. Under 38 U.S.C.A. § 7105(d), upon receipt of a notice of disagreement in response to a decision on a claim, the agency of original jurisdiction must take development or review action it deems proper under applicable regulations and issue a statement of the case if the action does not resolve the disagreement either by grant of the benefits sought or withdrawal of the notice of disagreement. If VA receives a notice of disagreement in response to notice of its decision on a claim that raises a new issue, section 7105(d) requires VA to take proper action and issue a statement of the case if the disagreement is not resolved; however, section 5103(a) does not require VA to provide notice of the information and evidence necessary to substantiate the newly raised issue. See VAOPGCPREC 8-03 (December 22, 2003); 69 Fed. Reg. 25180 (2004); 38 C.F.R. § 3.159(b)(3) (2014). 

As a consequence, VA is only required to advise the appellant of what is necessary to obtain the maximum benefit allowed by the evidence and the law. This has been accomplished here. The statement of the case (SOC), under the heading "Pertinent Laws; Regulations; Rating Schedule Provisions," set forth the relevant diagnostic code (DC) for rating the disability at issue, and included a description of the rating formulas for all possible schedular ratings under this diagnostic code. The Veteran was thus informed of what was needed not only to achieve the next-higher schedular rating, but also to obtain all schedular ratings above the initial evaluation that the RO assigned. Therefore, the Board finds that the Veteran has been informed of what was necessary to achieve a higher rating for the service-connected disability at issue.

VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private medical records identified by the appellant have been obtained, to the extent possible. The Veteran's Social Security Administration records have been associated with the file. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim. The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the appellant. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the appellant's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2013).

The RO provided the Veteran appropriate VA examinations in July 2008 and February 2014. The examinations are adequate because they are based on a thorough examination, a description of the Veteran's pertinent medical history, and appropriate diagnostic tests, to include x-ray. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one).

The Veteran has not reported receiving any recent treatment specifically for this condition and there are no records suggesting an increase in disability has occurred as compared to the prior VA examination findings. There is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disorder since he was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. The VA examination reports are thorough and provided findings pertinent to the rating criteria. The examinations in this case are adequate upon which to base a decision.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).

II. Increased Rating

Disability evaluations are determined by comparing a veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2014). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. Otherwise, the lower rating will be assigned. Id. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the appellant. Id. § 4.3.

An appeal from the initial assignment of a disability rating, such as the appeals in this case, requires consideration of the entire time period involved, and contemplates staged ratings where warranted. See Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's service-connected degenerative disc disease of the lumbar spine status post laminectomy L4-5 is rated as 20 percent disabling under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5242.

Scheduler ratings for disabilities of the spine are provided by application of the General Rating Formula for Diseases and Injuries of the Spine (General Formula) or by application of the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes found at 38 C.F.R. § 4.71a. The General Formula specifies that the criteria and ratings apply with or without symptoms such as pain (whether or not it radiates) stiffness, or aching in the area affected by residuals of the injury or disease. 38 C.F.R. § 4.71a.

The General Formula provides that a 20 percent rating is warranted for: Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; a combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id.

A 40 percent rating is warranted for: Forward flexion of the thoracolumbar spine greater 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. Id. A 100 percent rating is warranted for unfavorable ankylosis of the entire spine. Id. Ankylosis is defined, for VA compensation purposes, as a condition in which all or part of the spine is fixed in flexion or extension. 38 C.F.R. § 4.71a at Note (5).

Any associated objective neurologic abnormalities, including, but not limited to bowel or bladder impairment, are to be evaluated separately, under an appropriate diagnostic code. Id. At Note (1).

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 20 percent rating is assigned where there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past twelve months. Id. A 40 percent rating is assigned where there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past twelve months. Id. A 60 percent rating is assigned where there are incapacitating episodes having a total duration of at least six weeks during the past twelve months. 38 C.F.R. § 4.71a. For these purposes, an incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45, see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). Painful, unstable, or maligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. The factors involved in evaluating, and rating, disabilities of the joints include weakness; fatigability; incoordination; restricted or excess movement of the joint, or pain on movement. 38 C.F.R. § 4.45.

Private treatment records from 2003 through 2006 show treatment for degenerative disc disease. An April 2006 private treatment record reflects that the Veteran reported having constant pain in the right mid-back, the right low back, and the right hip/buttock and laterally down the right leg to the foot. He also stated that he had occasional numbness in those areas. 

A January 2005 VA X-ray showed very mild dextroscoliosis and degenerative disc disease. VA treatment records from September 2005 through June 2006 also show that the Veteran reported pain in his low back with occasional tingling. See April 2006 VA treatment record. A February 2006 VA treatment record noted the Veteran had moderately decreased forward flexion, extension and left lateral side bending of the lumbar spine. There was pain on extension and on bilateral rotation.

Decreased forward flexion of the lumbar spine was noted in February 2006, and the Veteran was provided a TENS unit. However, a December 2007 VA treatment notes that there was no lower extremity weakness/numbness.

The Veteran was afforded a VA spine examination in July 2008. Upon examination, the Veteran demonstrated forward flexion of 85 degrees. There was no additional loss of motion upon repetitive testing of the joint, but pain was noted beginning at 80 degrees. The Veteran's combined range of motion was 145 degrees. A history of fatigue, decreased motion, stiffness, weakness, and spasms was noted. The Veteran exhibited muscle spasm, localized tenderness, or guarding severe enough to be responsible for an abnormal spinal contour in the form of scoliosis. The VA examiner noted that pain was the major factor effecting functional capabilities with repetitive activity in the low back. The Veteran denied a history of urinary incontinence, and there was no indication of objective neurologic abnormalities at that time.

When seeking treatment from Dr. J.R. of ABO Healthcare Partners, the Veteran reported intermittent low back pain, and an X-ray from June 2009 revealed significant degenerative joint disease of the lumbar spine. He reported that he had pain that radiated into the right buttock down the lateral aspect of the right thigh toward the knee, and sometimes beyond the knee to the lateral calf. Upon examination, the Veteran's lower extremities showed normal muscle strength.

The Veteran's VA treatment records reflect that he continued to report pain in his lower back to VA providers. A March 2011 X-ray showed significant degenerative abnormalities but unchanged. The Veteran reported a pain tingling sensation to the right posterior back. There was no numbness, tingling sensation or weakness. There was also no urine or bowel incontinency found.

In October 2012, the Veteran was afforded another VA spine examination. The Veteran was diagnosed with degenerative arthritis of the lumbar spine, spinal stenosis of the lumbar region, and post laminectomy syndrome. The scar associated with the Veteran's lumbar spine surgery was not found to be painful or unstable and is not greater than 39 square centimeters in area. The Veteran indicated his low back pain increased with activity. Forward flexion was found to be 75 degrees with no additional limitation of range of motion in the thoracolumbar spine following repetitive-use testing. There was objective evidence of pain on forward flexion beginning at 30 degrees. The Veteran's combined range of motion was 220 degrees. The examiner noted the Veteran experienced pain on movement and interference with sitting, standing, and/or weight-bearing associated with his thoracolumbar spine. Furthermore, the Veteran's muscle strength testing, reflex testing, and sensory exam yielded normal results. The straight leg raising test was negative, and the Veteran did not have any signs or symptoms of radiculopathy. A sensory examination was normal on the right and left side. The examiner did not find the Veteran had any incapacitating episodes over the past twelve months, and there were no other neurologic abnormalities, such as bowel or bladder problems, due to the Veteran's lumbar spine condition. The Veteran reported using a cane on a regular basis.

Based on the evidence of record, the Board finds that an evaluation in excess of 20 percent for the Veteran's service-connected degenerative disc disease of the lumbar spine status post laminectomy L4-5 is not warranted prior to October 11, 2012. The Board has considered the Veteran's complaints of pain in his back, which the Board finds to be credible. The record fails to show either ankylosis or a fractured spine. Moreover, the evidence does not show forward flexion of the lumbar spine of 30 degrees or less, even with consideration of limitation of motion due to pain and weakness.

The preponderance of the evidence is also against assigning a scheduler rating higher than 20 percent for the Veteran's degenerative disc disease of the lumbar spine status post laminectomy L4-5 under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. There is also no evidence in the record showing that the Veteran has ever required bed rest, as prescribed by a physician.

Therefore, the Board finds that the Veteran's degenerative disc disease of the lumbar spine status post laminectomy L4-5 continues to warrant a 20 percent rating under DC 5242, prior to October 11, 2012. See 38 C.F.R. § 4.71a.

In reaching this conclusion, the Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also Deluca, 8 Vet. App. at 202. In the July 2008 VA examination, the examiner specifically performed additional limitation of motion testing on the Veteran's lumbar spine. Although there was objective evidence of pain following repetitive motion, the examiner found that the Veteran did not experience additional limitations of range of motion of his back following repetitive-use testing. Additionally, even with consideration of limitation of motion due to pain, at the July 2008 VA examination, pain on forward flexion began at 80 degrees. As such, the Board finds the DeLuca factors have been explicitly considered by the Board and the medical evidence of record, and a higher rating is not warranted based on additional functional loss due to repetitive use, prior to October 11, 2012.

The General Formula also indicates that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, must be evaluated separately, under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, DC's 5235-5243 at Note (1). In this case, there are no objective findings of bowel or bladder impairment noted in the examination reports or in VA treatment records. While the Veteran reported occasional tingling sensations in VA treatment records, in 2007 and 2011 treatment records, the Veteran himself denied any numbness, tingling sensation, or weakness associated with his lumbar spine. As such, the Board finds there are no associated objective neurologic abnormalities to be evaluated separately at this time.

The Board finds that from October 11, 2012, the date of the VA examination, a higher rating of 40 percent is warranted for degenerative disc disease of the lumbar spine. The October 2012 VA examination report reflects that there was objective evidence of painful motion at 30 degrees on forward flexion of the spine. As noted above, a 40 percent rating is warranted under the General Rating Formula for forward flexion of the thoracolumbar spine of 30 degrees or less. Thus, with consideration of pain on motion, the Board finds that a higher rating of 40 percent is warranted from October 11, 2012. See 38 C.F.R. §§ 4.40 and 4.45; Deluca, 8 Vet. App. at 202. 

The Board finds that a rating in excess of 40 percent is not warranted from October 11, 2012. There was no evidence of unfavorable ankylosis of the entire thoracolumbar spine. The October 2012 VA examiner also did not find any objective neurologic abnormalities due to the Veteran's degenerative disc disease of the lumbar spine status post laminectomy L4-5. A sensory examination of the right and left lower extremities was normal. The VA examiner found the Veteran's right and left sides were not affected by radiculopathy. Thus, the Board finds that there are no associated objective neurologic abnormalities to be evaluated separately at this time. The October 2012 VA examination specifically indicated that the Veteran had not had any incapacitating episodes in the past twelve months. Thus, a higher rating is not warranted under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Additionally, although the Veteran has a scar associated with lumbar spine surgery, on examination in October 2012, the scar was not found to be painful or unstable and is not greater than 39 square centimeters in area. Consequently, a separate rating is not warranted for a scar. 

The Board also finds no other diagnostic codes would be appropriate to evaluate the Veteran's lumbar spine condition during the period on appeal. See Schafrath, 1 Vet. App. at 595.

Extraschedular Consideration

The Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected degenerative disc disease of the lumbar spine status post laminectomy L4-5 is inadequate. A comparison between the level of severity and symptomatology of the Veteran's lumbar spine disability with the established criteria shows that the rating criteria reasonably describe his disability level and relevant symptomatology. Specifically, the criteria contemplate the Veteran's reports of pain and limited motion, which is further considered by application of 38 C.F.R. § 4.40, § 4.45, and § 4.59. In short, the rating criteria reasonably describe the Veteran's disability level and symptomatology. The Board, therefore, has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321(b) (1) is not warranted.


ORDER

Prior to October 11, 2012, an initial rating in excess of 20 percent for degenerative disc disease of the lumbar spine status post laminectomy L4-5 is denied.

From October 11, 2012, a staged, initial rating of 40 percent for degenerative disc disease of the lumbar spine status post laminectomy L4-5 is granted.



REMAND

As discussed in the introduction, the Board finds that the issue of entitlement to a TDIU has been raised by the record. The Veteran is service-connected for degenerative disc disease of the lumbar spine, sought an increased rating, and has been unemployed throughout the period on appeal. See Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001). 

A November 2002 Orthopedic Spine Consultation reflects that the Veteran reported he had worked as a tube bender from March 1968, which required lifting up to 35 pounds from the ground to above shoulder level. He was also required to perform activities of carrying, pulling, pushing, kneeling and climbing on a frequent basis. He would continuously stand, twist from side to side, and perform lateral bending. His job was also hand intensive, requiring gripping, grasping, and torqueing, pinching and holding activities. The Veteran had a modified work status in 2002 working as a general inspector. He retired in March 2002. An April 2003 private treatment record reflects that the Veteran completed the 12th grade and that he last worked in 2002 due to injury. 

In addition to the degenerative disc disease of the lumbar spine, which the Board finds is evaluated as 40 percent disabling from October 11, 2012, the Veteran is service-connected for residuals of a right navicular fracture of the right hand, evaluated as 20 percent disabling, residuals of a right navicular wrist fracture, rated as 10 percent disabling, and bilateral pes planus with plantar fasciitis, rated as 50 percent disabling. Thus, the Veteran currently meets the schedular criteria for a TDIU. The October 2012 VA examiner noted that the Veteran should tolerate a sedentary work environment that limits lifting to less than 30 pounds and where he can stand, sit and ambulate at will or his own pace. The Veteran's work history indicates he performed primarily physical work. The October 2012 VA examiner only addressed the impact of the Veteran's back disability on his ability to work. Thus, a VA opinion should be obtained to determine whether the Veteran's service-connected disabilities, combined, render him unable to obtain and maintain substantially gainful employment. The Veteran should also receive notice of the elements of a TDIU claim and be provided with an opportunity to present information pertaining to the claim.

The VA treatment records in the file only date to June 2012. Consequently, the Board requests the appellant's complete VA treatment records from June 2012 to present. 

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and provide him fully compliant notice pertaining to a claim for a TDIU, as required under applicable laws, regulations, and legal precedents. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159; Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Notice must include information regarding TDIU, to include a specific request for a properly completed VA Form 21-8940 (Veteran's Application for Increased Compensation Based on Unemployability).

2. Obtain all of the appellant's VA treatment records from June 2012 to present. If no records are available, the claims folder must indicate this fact.

2. After completion of the above, forward the claims file to a VA clinician of appropriate expertise to offer an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran is unable to secure or follow a substantially gainful occupation solely as a result of the combination of his service-connected disabilities during the period on appeal, from March 12, 2004.

The Veteran is service-connected for bilateral pes planus with plantar fasciitis, rated as 50 percent disabling from January 1, 2012; residuals of a right navicular fracture, rated as 20 percent disabling from October 7, 2002; degenerative disc disease of the lumbar spine status post laminectomy L4-5, rated as 20 percent disabling from March 12, 2004, and as 40 percent disabling from October 11, 2012; and residuals of a right navicular wrist fracture with chronic strain/sprain, degenerative joint disease, right wrist with limited motion (dominate hand), rated as 10 percent disabling from October 7, 2002.

The examiner should consider the Veteran's education, experience and occupational background in determining whether he is unable to secure or follow a gainful occupation in light of his service-connected disabilities.

To the extent possible, the examiner should distinguish symptoms and impairment attributable to the Veteran's service-connected disorders from those attributable to any other diagnosed disorders.

The examiner is requested to provide a complete rationale for his or her opinion, based on his or her clinical experience and medical expertise.

If an examination is necessary to provide an opinion, such should be accomplished.

3. Thereafter, readjudicate the issue on appeal of entitlement to a TDIU. If the benefit sought is not granted, issue a supplemental statement of the case and afford the appellant an appropriate opportunity to respond. The case should then be returned to the Board, as warranted.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs