Citation Nr: 1528194 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 11-15 967 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

1. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to March 13, 2015 and a rating in excess of 70 percent thereafter.

2. Entitlement to a total rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

N. Sangster, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1970 to December 1971. His awards and decorations include the Combat Infantryman Badge.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. The RO granted the Veteran an initial 30 percent disability rating for his PTSD.

The Board previously remanded this appeal for further development in August 2012.

During the pendency of this appeal, in April 2015, the RO granted an increased rating from 30 percent to 70 percent effective March 13, 2015 for PTSD. Applicable law mandates that when a Veteran seeks an increased evaluation, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. See AB v. Brown, 6 Vet. App. 35 (1993).


FINDINGS OF FACT

1. Prior to March 13, 2015, the occupational and social impairment from the Veteran's PTSD has most nearly approximated reduced reliability and productivity.

2. Since March 13, 2015, the Veteran's PTSD most approximated occupational and social impairment, but not total, with deficiencies in most areas, such as work, school, family relations, judgment, thinking and mood.

3. Prior to March 13, 2015, the Veteran's service-connected disabilities do not prevent him from securing and following substantially gainful employment.

4. Since March 13, 2015, the evidence of record establishes that the Veteran's service-connected disabilities prevent him from securing and following substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating of 50 percent, but not higher, for PTSD have been met prior to March 13, 2015. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2014).

2. Since March 13, 2015, the criteria for a rating in excess of 70 percent for PTSD have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2014).

3. The criteria for entitlement to TDIU have not been met prior to March 13, 2015. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.16 (2014).

4. The criteria for entitlement to TDIU have been met since March 13, 2015. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duty to Notify and Assist

VA will assist a claimant in obtaining evidence necessary to substantiate a claim, but is not required to provide assistance to a claimant if there is no reasonable possibility that assistance would aid in substantiating the claim. VA must also notify the claimant of any information, and any medical or lay evidence, not previously provided to VA that is necessary to substantiate the claim. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2014). 

The Board also notes that the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). 

The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The record shows that the Veteran was mailed letters in March 2010 and August 2012 advising him of what the evidence must show and of the respective duties of VA and the claimant in obtaining evidence. The March 2010 and August 2012 letters also provided the Veteran with appropriate notice with respect to the disability rating and effective date elements of his claims. 

The Board also finds the Veteran has been afforded adequate assistance in response to his claims. The Veteran's service treatment records (STRs) and VA treatment records have been obtained. In addition, pursuant to the Board's August 2012 remand, the Veteran was asked to identify or submit any outstanding medical treatment records. The evidence of record indicates that the Veteran never responded to this request made in an August 2012 letter. Further, the Veteran was afforded VA examinations prior and subsequent to the Board's August 2012 remand. The Veteran has not identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claims. The Board has not been made aware of any outstanding evidence.

In light of the foregoing, the Board finds that there was substantial compliance with the Board's remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).



II. Entitlement to an Initial Evaluation Higher than 30 Percent for PTSD Prior to March 13, 2015, and a Rating in Excess of 70 Percent Thereafter

Disability evaluations are determined by evaluating the extent to which a claimant's service-connected disability adversely affects her ability to function under the ordinary conditions of daily life, including employment, by comparing her symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.10 (2014). If two evaluations are potentially applicable, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7 (2014). 

The Veteran's PTSD is rated under 38 C.F.R. § 4.130, DC 9411, which utilizes the general rating formula for mental disorders. Under that code, a 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent evaluation is assignable when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent evaluation is assignable when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances ( including work or a worklike setting); and inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is assignable when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms noted above are meant to represent examples that might be indicative of a certain evaluation. The list is not exhaustive and, for the Board to assign a specific evaluation, it need not find all or even some of the symptoms present. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence establishes that the Veteran experiences other symptoms that cause occupational or social impairment equivalent to that which would be caused by the symptoms noted above, the appropriate equivalent evaluation is to be assigned. Id. at 443; see also Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004). 

Considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that an initial disability evaluation of 50 percent for PTSD prior to March 13, 2015 is warranted. During this relevant time period under consideration, the Veteran's PTSD has manifested as occupational and social impairment with reduced reliability and productivity, which nearly approximates the criteria for a 50 percent rating, due to symptoms including a restricted affect, anxiety attacks, difficulty in understanding complex commands, impairment of short-term memory, disturbances of motivation and mood, problems with concentration, and difficulty in establishing and maintaining effective work and social relationships. 

The Veteran had a VA examination in June 2010. On mental status examination, the Veteran was pleasant and cooperative. He maintained eye contact well, but his memory function was noted as impaired. No psychomotor abnormalities were noted. The Veteran was oriented in all spheres. He understood the purpose of the examination and he had good memory function evidenced by his ability to remember three out of three objects at the end of one minute. In addition, the Veteran was able to remember two out of three objects at the end of 15 minutes. The examiner commented that no memory deficit could be elicited. The Veteran's mood and affect were anxious. The examiner stated that the Veteran was not suicidal, homicidal, violent, psychotic, manic, hypomanic, obsessive or compulsive. The Veteran's fund of knowledge was good as well as his abstract ability, insight and judgment. The examiner opined that the Veteran suffered from the primary psychiatric diagnosis of alcohol dependence. He stated that this entity was the single most significant mental health problem from which the Veteran suffered. The examiner also diagnosed the Veteran with PTSD, combat related, chronic, and alcohol persisting amnestic disorder. The Veteran continued to have a memory deficit for short term information and details. The examiner, however, commented that there was no evidence that the Veteran's memory function or cognition was organically impaired due to anything else other than his alcohol dependence. In addition, he stated that the Veteran persistently avoided stimuli associated with the traumatic events including restricted range of affect, feelings of detachment from others, and markedly diminished participation in external activities. Further, the examiner noted that the Veteran's PTSD was manifested by difficulty falling asleep, difficulty remaining asleep, irritability, outbursts of anger, intermittent difficulty concentrating, hypervigilance and exaggerated startle response. 

Moreover, the examiner stated that the Veteran suffered from significant impairment in his social and occupational functioning. The examiner noted that the Veteran had not worked for the past two years since his employer went out of business. He commented that the Veteran's social problems were primarily the result of his alcohol dependence, but was also impacted by his PTSD symptoms. The examiner stated that the Veteran was able to understand and complete simple commands, but would have difficulty completing complex tasks as a result of his alcohol dependence. In his opinion, the examiner felt that the Veteran was capable of performing some work from a mental health point of view as pertaining to his PTSD, but stated that while the Veteran continued to drink as extensively as he was, his alcohol dependence prevented him from working. He concluded that only considering the Veteran's PTSD and its effect on his employability that the Veteran would be able to perform repeated simple work provided the parameters of his work were made clear, but that he would need to work in relative isolation.

In sum, the overall depiction of the Veteran's service-connected psychiatric disability commensurates with the criteria for a 50 percent rating under Diagnostic Code 9411 for occupational and social impairment with occupational and social impairment with reduced reliability and productivity. The symptoms associated with his PTSD during this time period included insomnia; irritability; outbursts of anger; difficulty concentrating; difficulty in understanding complex commands; disturbances of motivation and mood; hypervigilance; impaired short term memory; and an exaggerated startled reflex. The evidence of records shows he did not have panic impaired judgment, near-conscious panic or depression affecting his ability to function independently, spatial disorientation or neglect of personal appearance or hygiene. Moreover, the VA examiner noted the Veteran was able to manage his finances. Additionally, the VA examiner attributed the severity of the Veteran's symptoms with alcohol dependence and not to his PTSD such as difficulty completing complex tasks. Hence, a rating of 50 percent, but no higher, is warranted for the initial evaluation of PTSD prior to March 13, 2015.

The Board, however, concludes that an assignment of a rating higher than 70 percent since March 13, 2015 is not warranted. His March 2015 VA examination showed that his PTSD symptoms were best described as occupational and social impairment with reduced reliability and productivity. The Veteran denied having panic attacks but stated that he got shaky when he thought about war and his war memories would keep his mind going at night. He endorsed symptoms of depression and a sad mood with crying spells, but denied suicidal or homicidal ideation or intent. The Veteran described his energy levels as "slowing down" and there were no reports of problems with concentration, focus or attention. He stated that he averaged eight hours of sleep two nights out of the week and had nightmares three to four times a week. The examiner noted that it was difficult to interview and obtain an accurate history from the Veteran as he would continue to talk about his Army service and Vietnam. The examiner confirmed the Veteran's diagnosis of PTSD. 

On mental status evaluation, the examiner observed that the Veteran was cooperative, amiable, but not considered a good historian to obtain specific information from medical record. The Veteran was, however, able to recall four out of four items upon immediate and five-minute recall. He endorsed memories of war-related incidents with periodic sadness expressed when he remembered loss of Vietnam soldiers who were killed. He also repeated accounts of various past problems with his ex-wife as well as Vietnam events with little content about his current life situation other than drinking alone or with others. The Veteran's PTSD symptoms were manifested by anxiety, suspiciousness, chronic sleep impairment, impairment of short and long term memory, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a worklike setting, and neglect of personal appearance and hygiene. The examiner further commented that the Veteran was psychologically unreliable and inconsistent due to heavy active drinking dependence, which would interfere with any productivity on a job. She noted the Veteran's reports and said his past history corroborated many interpersonal conflicts in previous jobs leading to him being fired due to PTSD symptoms and drinking. The examiner stated that these diagnoses have been so interrelated over the years that the negative effects of one diagnosis over the other was not possible to separate. She concluded that the Veteran did not appear to pose any threat of danger or injury to self or others.

The March 2015 VA examination demonstrates that the Veteran's PTSD is manifested by symptoms including markedly diminished interest or participation in significant activities; feelings of detachment or estrangement from others; anxiety; suspiciousness; chronic sleep impairment, impairment of short and long term memory; disturbances of motivation and mood; difficulty in adapting to stressful circumstances, including work or a worklike setting; and neglect of personal appearance and hygiene. Although the VA examiner concluded that the Veteran's PTSD was best described as occupational and social impairment with reduced reliability and productivity, the symptoms described above that were endorsed by the Veteran more nearly approximates occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking and mood. Thus, an assignment of 70 percent since March 13, 2015 was sufficient based on the findings of this March 2015 VA examination. At no time, however, have the criteria for a 100 percent schedular rating been met, as the evidence does not show that the Veteran's PTSD causes total occupational and social impairment. The Veteran is able to function independently. The March 2015 VA examiner observed that the Veteran was able to control his own finances. In addition, there were no reports of persistent delusions or hallucinations. Further, the March 2015 VA examiner observed that the Veteran did not pose any threat of danger to himself or others. Accordingly, a rating in excess of 70 percent since March 13, 2015 for PTSD is denied.

This claim need not be referred for an extraschedular rating pursuant to 38 C.F.R. § 3.321(b). See also Thun v. Peake, 22 Vet. App. 111, 114 (2008). There is no indication of an exceptional disability picture such that the schedular evaluation for the Veteran's service-connected PTSD is inadequate, as there is nothing manifested outside the scope of the rating criteria. As noted in Mauerhan v. Principi, 16 Vet. App. 436 (2002), the rating criteria do not contain an exhaustive list of symptoms associated with a mental health disorder. Therefore, while the Veteran may exhibit some of the listed symptoms but the fact that other symptoms may not be listed does not render the symptoms unusual or exceptional. What must be considered more closely in terms of the criteria is how the symptoms impact the Veteran socially and occupationally. 

In the case at hand, the record reflects that the Veteran has not required frequent hospitalizations for the disability and that the manifestations of the disability are not in excess of those contemplated by the schedular criteria. The various symptoms endorsed by the Veteran produce a level of impairment found within the rating criteria. There is nothing in his reported symptomatology or in how it affects him that is considered unusual or exceptional. Accordingly, the Board has determined that referral of this case for extra-schedular consideration is not in order.

III. Whether Entitlement to a TDIU is Warranted

Under the applicable criteria, total disability ratings for compensation based upon individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. See 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

Prior to March 13, 2015, the Veteran's service-connected disabilities include PTSD, now rated as 50 percent disabling; tinnitus, rated as 10 percent disabling; and a noncompensable rating for hearing loss, which give him a combined evaluation of 60 percent for this timeframe. Thus, he did not meet the schedular requirements for a TDIU prior to March 13, 2015. See 38 C.F.R. § 4.16(a). However, since March 13, 2015, the assigned rating of 70 percent for PTSD alone meets the criteria for schedular consideration of TDIU. Id.

When a claimant does not meet the percentage requirements of § 4.16(a) for consideration of a TDIU, as is the case here prior to March 13, 2015, he still may establish entitlement to this benefit on an extraschedular basis under the alternative provisions of § 4.16(b) if it is shown he is unemployable on account of service-connected disability or disabilities. In this circumstance, the Board would be precluded from assigning an extraschedular TDIU in the first instance, having instead to remand the claim to the RO for referral to the Director of VA's Compensation and Pension Service for his special consideration. In such a case, the rating board is to include in its submission a full statement as to the Veteran's service-connected disabilities, employment history, educational and vocational attainment and factors having a bearing on the issue. 38 C.F.R. § 4.16(b) (2014).

While the regulations do not define "substantially gainful occupation", VA adjudication Procedure Manual, M21-1, Part VI, paragraph 7.09(a)(7), defines the similar term of "substantially gainful employment" as "that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the Veteran resides." See also Faust v. West, 13 Vet. App. 342 (2000) (defining "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to the veteran's earned annual income....)

Marginal employment, for example, as a self-employed worker or at odd jobs or while employed at less than half of the usual remuneration, shall not be considered "substantially gainful employment." 38 C.F.R. § 4.16(a). See also Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). That is, a Veteran may be considered as unemployable upon termination of employment that was provided on account of disability or in which special consideration or accommodation was given on account of the same. See 38 C.F.R. § 4.18. Marginal employment generally shall be deemed to exist when a Veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. 38 C.F.R. § 4.16(a). Marginal employment also may be held to exist on a facts-found basis when earned annual income exceeds the poverty threshold. Id. Such situations may include, but are not limited to, employment in a protected environment such as a family business or sheltered workshop. Id. 

A veteran's service-connected disabilities, alone, must be sufficiently severe to cause unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training and previous work experience, but not to his age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19 (2014); see also Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a claimant is unemployed or has difficulty obtaining employment, however, is not enough. A high rating in itself constitutes recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Id. 

That said, requiring a Veteran to prove that he is 100 percent or totally unemployable is different than requiring proof that he cannot obtain and maintain substantially gainful employment. The use of the word "substantially" suggests an intent to impart flexibility into a determination of a Veteran's overall employability. A requirement that a Veteran prove 100 percent unemployability leaves no flexibility. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that entitlement to a TDIU is not warranted prior to March 13, 2015, but has been established since that date. 

A review of the record indicates that the Veteran has a high school degree. In addition, at his VA audiological evaluation in July 2010, he reported that post-service, he worked for the City of Virginia Beach for four years and then as a driver for a metal supply company for two years. Subsequently, the Veteran worked for a car factory for five years, as a driver for a year, a roofing company for two years and a construction company for a year. Moreover, the Veteran stated that he worked for a pipe plant for six years. Regarding the Veteran's right ear hearing loss and tinnitus, the examiner commented that the effect on the Veteran's usual occupation and daily activity was that he was hard of hearing.

Additionally, as discussed above already, the June 2010 VA examiner opined that the Veteran was capable of performing some work, but stated that his alcohol dependence prevented him from working. He noted that the Veteran had not worked since his employer went out of business two years prior. In any event, the examiner stated that the Veteran could perform repeated simple work provided the parameters of his work were made clear. Further, he commented that the Veteran's supervisors would need to know that he did not work well with other people and he would need to work in isolation.

In consideration of the evidence of record, the Board finds that the Veteran's service-connected disabilities do not preclude him from securing and following a substantially gainful occupation prior to March 13, 2015. The Veteran has post-service work experience in various industries in different capacities. The June 2010 VA examiner who addressed the matter determined that the Veteran was capable of gainful employment. Although certain occupations requiring significant interactions with people may be precluded, the June 2010 VA examiner found that the Veteran could perform repeated simple work and that the main issue preventing him from securing employment was his alcohol dependence and not his PTSD.

The Veteran is competent and capable of stating that he has encountered difficulties in securing and maintaining substantial employment. Likewise, the Board may not base a decision on its own unsubstantiated medical conclusions but, rather, may reach a medical conclusion only on the basis of independent medical evidence in the record. Hensley v. Brown, 5 Vet. App. 155 (1993). Health professionals are experts and are presumed to know the requirements applicable to their practice and to have taken them into account in providing a diagnosis. See Cohen v. Brown, 10 Vet. App. 128, 137 (1997). Here, however, the June 2010 VA examiner therefore steadfastly disputed any notion the Veteran is unemployable, much less strictly on account of his service-connected PTSD. Therefore, a TDIU rating is not warranted prior to March 13, 2015.

As of March 13, 2015, however, resolving all doubt in the Veteran's favor, a TDIU rating is warranted. The March 2015 VA examiner observed that the Veteran was psychologically unreliable and inconsistent due to his heavy active drinking dependence, which would interfere with any productivity on a job. As already noted above, she documented the Veteran's reports and stated that his past history corroborated many interpersonal conflicts in previous jobs leading to being fired due to PTSD symptoms and drinking. The examiner concluded that both of these diagnoses have been so interrelated over the years that the negative effects of one diagnosis over the other was not possible to separate. Accordingly, the Board concludes that a TDIU is warranted effective March 13, 2015.


ORDER

Entitlement to an initial rating of 50 percent for PTSD, but no higher, is granted for the period prior to March 13, 2015, subject to the statutes and regulations governing the payment of retroactive VA compensation.

Entitlement to a rating in excess of 70 percent since March 13, 2015 is denied.

Entitlement to a TDIU prior to March 13, 2015 is denied.

Entitlement to a TDIU is granted effective March 13, 2015, subject to the statutes and regulations governing the payment of retroactive VA compensation.
 



____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs