Howard F. ROBERSON,
Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 00–7009.

United States Court of Appeals, Federal Circuit.

DECIDED: May 29, 2001.

---

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director; and Robert E. Kirschman, Jr., Assistant Director. Of counsel on the brief were Donald E. Zeglin, Acting Assistant General Counsel; and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before GAJARSA, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

## DECISION

Howard F. Roberson appeals from the decision of the United States Court of Appeals for Veterans Claims affirming the Board of Veterans Appeals' ("Board") decision that a 1984 rating decision did not involve clear and unmistakable error ("CUE"). *See Roberson v. West,* No. 97–1971, 1999 WL 757099 (Vet.App. July 27, 1999). We hold that once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the VA must consider total disability based upon individual unemployability ("TDIU"). We further hold that proving inability to maintain "substantially gainful occupation" for entitlement to TDIU does not require proving 100 percent unemployability. Because the Court of Appeals for Veterans Claims erred in holding that Roberson failed to make a claim for TDIU, and erred in applying an incorrect standard for TDIU, we reverse and remand.

## BACKGROUND

Roberson served on active duty in the U.S. Marine Corps from May 26, 1967 until February 10, 1971. His service and medical records are negative for any psychiatric condition. In a 1975 rating decision, the regional office ("RO") awarded service connection to Roberson for scars, and denied service connection for chronic low back pain with spondylolysis and high frequency hearing impairment.

In 1982, Roberson submitted an application for benefits for psychiatric problems, which he attributed to his service in Vietnam. In his application, Roberson noted that he had not worked in almost a year. He also included a statement from his wife describing his behavior and his inability to remain employed. One year later, in 1983, Roberson was admitted to a Veteran's Administration ("VA") hospital to receive treatment to "get his life together again." Roberson was diagnosed with alcohol dependence and post-traumatic stress disorder ("PTSD"). Subsequently, a VA examination indicated that Roberson had been unemployed for two years. The examiner diagnosed Roberson with chronic PTSD, substance abuse in remission, and recur-

rent-type major depression. Included in the same VA examination, a social work services examiner reported that Roberson had held several construction jobs between 1972 and 1978, lasting for periods ranging from two weeks to seven months.

In a 1984 rating decision, the RO awarded service connection for PTSD and assigned a seventy percent disability rating, effective September 20, 1982, the date on which Roberson submitted his application for VA benefits for psychiatric problems. The RO's rating decision noted that Roberson had a history of substance abuse, and had "been unemployed for 10½ years primarily because of what was described as poor concentration." Roberson was also awarded service connection for Tinnitus, evaluated at ten percent disabling, effective November 30, 1982, and his ten percent disability rating for scars was reduced to zero.

Independent of the VA's actions, in 1987 the Social Security Administration ("SSA") concluded that Roberson met the disability insured status requirements of the Social Security Act, because he had "not engaged in substantially gainful activity" between October 1981 and June 1984.

In March of 1989, 38 C.F.R. § 4.16 was amended to add subsection (c), stating: "in cases in which the only compensable service-connected disability is a mental disorder assigned a seventy percent evaluation, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation ... the mental disorder shall be assigned a 100 percent evaluation under the appropriate diagnostic code." This amendment was brought to the RO's attention by Roberson's counsel, who requested consideration of a 100 percent disability rating to be effective as of September 1982.

In response, on October 2, 1990, the Board increased Roberson's disability rating for PTSD to 100 percent. However, this rating decision was effective March 1987 rather than September 1982. The Board based its decision on the following: (1) a September 1987 vocational rehabilitation Board finding that Roberson "was not feasible for training;" (2) VA medical records; (3) a September 1988 social work survey; (4) private medical records; (5) testimony from Roberson and his wife in a 1989 RO hearing; (6) testimony from Roberson and his wife at a 1990 traveling Board hearing; and (7) evidence presented during the traveling Board hearing including evidence of receipt of Social Security benefits.

Five years after Roberson's disability was increased to 100 percent, in a letter dated September 29, 1995, Roberson's counsel alleged CUE in the 1984 rating decision, based on the RO's failure to apply 38 C.F.R. § 3.340(a)(1). This regulation states:

> Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. Total ratings will not be assigned, generally, for temporary exacerbations or acute infectious diseases except where specifically prescribed by the schedule.

Roberson's counsel asserted that, based on Roberson's unemployability and inability to concentrate, Roberson was entitled to a 100 percent disability rating under section 3.340 in the 1984 rating decision. In a February 28, 1996 response, the RO informed Roberson that he had not submitted a valid CUE claim. Roberson sub-

mitted a notice of disagreement and subsequently perfected his appeal.

In a letter to the Board dated March 1997, Roberson additionally alleged that, based upon the record before the RO in its 1984 decision, the RO "clearly and erroneously failed to follow the controlling regulations regarding total disability based upon individual unemployability [TDIU]." He stated that, because the record disclosed that Roberson had been unemployed for ten and a half years, he was entitled to TDIU. The Court of Appeals for Veterans Claims, however, noted that this statement regarding ten and a half years of unemployment was contradicted by a 1987 VA medical report stating that Roberson had been employed as a structural steel worker within that ten and a half year period. The court also found that "there was sufficient evidence of record at the time of the RO's January 1984 decision to reasonably conclude that the veteran was not 100% unemployable." *Roberson v. West*, No. 97–1971, slip op. at 6.

On July 7, 1997, the Board determined that the 1984 rating decision, establishing service connection for PTSD and a seventy percent disability rating, did not contain CUE because Roberson had failed to allege TDIU, and even if he had alleged TDIU, he was not eligible for TDIU because he was capable of maintaining substantially gainful employment. The Court of Appeals for Veterans Claims affirmed the Board's decision that Roberson had failed to allege TDIU, and that he was not eligible for TDIU. Roberson timely appealed the Court of Appeals for Veterans Claims' dismissal to this court. We have jurisdiction under 38 U.S.C. § 7292 (1994).

## DISCUSSION

 Our jurisdiction to review decisions of the Court of Appeals for Veterans Claims is limited. We have jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof ... and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (1994). Unless there is a constitutional issue presented, however, we may not review factual determinations or the application of law to a particular set of facts. *Id.* § 7292(d)(2).

### 38 C.F.R. § 3.155(a)

Roberson alleges that the Court of Appeals for Veterans Claims misinterpreted 38 C.F.R. § 3.155(a), governing informal claims, which states in pertinent part:

Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Department of Veterans Affairs, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim. *Such informal claim must identify the benefit sought.*

38 C.F.R. § 3.155(a) (1994) (emphasis added).

 The Court of Appeals for Veterans Claims held that even if the VA had a duty to develop all possible claims that are reasonably raised from a liberal reading of the record, Roberson was required under section 3.155(a) to specifically request entitlement to the benefit sought—in this case TDIU. The Court of Appeals for Veterans Claims determined that because Roberson did not make a specific request for TDIU, the VA was not obligated to adjudicate such a claim.

Roberson alleges that *Norris v. West*, 12 Vet.App. 413 (1999), is applicable and holds that the VA's requirement that TDIU be specifically requested "loses sight of the Congressional mandate that the VA is to 'fully and sympathetically develop the veteran's claim to its optimum before decision on its merits.'" *Norris*, 12 Vet.App. at 420 (citing *Hodge v. West*, 155 F.3d 1356, 1362–63 (Fed.Cir.1998)). Although *Norris* does not bind this court as precedent, it is both on-point and informative.

The facts of *Norris* are similar to the present case. Norris was rated 70 percent disabled from a mental disorder. *Id.* at 415. His rating was increased to 100 percent based on 38 C.F.R. § 4.16 (i.e., the same basis for increasing Roberson's rating to 100 percent). *Id.* at 416. Before the Court of Appeals for Veterans Claims, Norris alleged CUE in not giving him an earlier effective date for his 100 percent rating. *Id.* The government alleged that an informal claim for TDIU was not raised under the specific facts of Norris's case because entitlement to TDIU requires a showing of at least an informal claim specifically alleging TDIU. *Id.* The Court of Appeals for Veterans Claims rejected the government's argument because such a position "loses sight of VA's congressional mandate that VA is to 'fully and sympathetically develop the veterans' claim to its optimum before deciding it on its merits.'" *Id.* at 420 (citing *Hodge v. West*, 155 F.3d 1356, 1362–63 (Fed.Cir.1998)). In addition, the Court of Appeals for Veterans Claims stated that developing a claim "to its optimum" must include determining all potential claims raised by the evidence and applying all relevant law and regulation raised by that evidence regardless of how the claim is identified. *Id.*

Despite this generalized holding, the facts of *Norris* are distinguishable from Roberson's situation. In *Norris*, the Court of Appeals for Veterans Claims held that, under 38 C.F.R. § 3.157(b), an informal claim for an increase in rating percent was created with each VA examination report. *Id.* at 419. In addition, each informal claim for a rating increase included a claim for the highest rating possible, all the way up to 100 percent. *Id.* Thus, the court did not look at the propriety of the initial rating determination. This is an important distinction. In *Norris*, it was the subsequent informal claims that were found to raise TDIU. *Id.* at 421. The Court of Appeals for Veterans claims stated:

> when the VA conducts a medical examination ... if the results indicate an increase in severity in the disability, VA must then evaluate the circumstances as a claim for an increased rating. Further, the Court holds that when an RO is considering a rating increase claim from a claimant who's schedular rating meets the minimum criteria of section 4.16(a) and there is evidence of current service-connected unemployability ... evaluation of that rating increase must also include an evaluation of a reasonably raised claim for a TDIU rating. In that situation, where those two criteria are satisfied, a well-grounded TDIU claim is included in every rating-increase claim, and VA would be required to adjudicate that well-grounded TDIU claim.

*Id.* (internal citations omitted).

■ The court then held that Norris's informal TDIU claims, having never been finally decided by the RO, were not ripe for adjudication. *Id.* at 422. Thus, CUE was never considered. Unlike Norris, Roberson's original medical disability claim was decided by the RO and is the claim for

which Roberson seeks the highest rating possible. Ratings decisions by the DVA are deemed "final and binding . . . as to conclusions based on the evidence on file at the time the [DVA] issues written notification of the decision." 38 C.F.R. § 3104(a) (1994). *But see Hayre v. West,* 188 F.3d 1327, 1333 (Fed.Cir.1999) ("[a] breach of duty to assist in which the VA failed to obtain pertinent [evidence] specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error . . . that vitiates the finality of an RO decision for purposes of a direct appeal"). Roberson has not alleged that the VA failed to obtain pertinent evidence. Thus, Roberson's claim has been finally decided by the RO.

■ Roberson asserts that the 1984 rating decision involved CUE because the VA breached the duty to assist. As we held in *Hayre v. West,* 188 F.3d 1327, 1332–33 (Fed.Cir.1999), breach of the duty to assist cannot form the basis for a CUE claim. This holding is specifically confirmed by DVA regulations. *See* 38 C.F.R. § 20.1403(d)(2) (2000); *Disabled Am. Veterans v. Gober,* 234 F.3d 682, 697 (Fed.Cir. 2000) (citing *Caffrey v. Brown,* 6 Vet.App. 377, 383–84 (1994)). However, the duty to assist under 38 U.S.C. § 5107(a) is a duty to assist a claimant "in developing the facts pertinent to the claim," and that duty is separate from the VA's mandate to fully develop the veteran's claim. Even though the duty to assist cannot form the basis for CUE, we must nonetheless determine the standard that applies when the VA is considering a CUE claim. When a decision of the VA is final, as here, there are two grounds for attack on that decision under the statute. The veteran can seek to reopen a disallowed claim based on new and material evidence under 38 U.S.C. § 5108, or the veteran can seek to "reverse[] or revise[]" the Board's decision based on CUE under 38 U.S.C. § 7111. In *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998), we considered the first type of error and determined that Congress has mandated that the VA is "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." *Hodge,* 155 F.3d at 1362 (quoting H.R. Rep. No. 100–963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795). We see no basis for applying a different standard to a CUE claim, and we hold that the DVA is thus required to consider a CUE claim using the standard of *Hodge.*

The government argues that, because Roberson never specifically requested TDIU in his original claim, he cannot be considered to have filed a TDIU claim despite his submission of evidence regarding his unemployability. We disagree.

Once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the "identify the benefit sought" requirement of 38 C.F.R. § 3.155(a) is met and the VA must consider TDIU. The VA must consider TDIU because, in order to develop a claim "to its optimum" as mandated by *Hodge,* the VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU. Thus, we reverse the court's holding that Roberson failed to make a claim for TDIU before the RO at the time of its 1984 decision.

### *38 C.F.R. § 3.340(a)*

■ Having found a claim for TDIU, we consider Roberson's entitlement to TDIU

under 38 C.F.R. § 3.340(a)(1), dating back to the 1984 rating decision. Roberson alleges that, in determining his eligibility for TDIU, the Court of Appeals for Veterans Claims misinterpreted section 3.340(a)(1). This section stated, at the time the RO evaluated Roberson's claim, "[t]otal disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a *substantially gainful occupation.*" 38 C.F.R. § 3.340(a)(1) (1983) (emphasis added). Roberson asserts that the Court of Appeals for Veterans Claims misconstrued "substantially gainful occupation" to mean "100% unemployable." Roberson bases his allegation on the court's statement that "there was sufficient evidence of record at the time of the RO's January 1984 decision to reasonably conclude that the veteran was not 100% unemployable." *Roberson v. West*, No. 97–1971, slip op. at 6. Roberson asserts that the plain language of the regulation does not require the veteran to show 100 percent unemployability in order to prove that he cannot "follow substantially gainful occupation." We agree.

Requiring a veteran to prove that he is 100 percent unemployable is different than requiring the veteran to prove that he cannot maintain substantially gainful employment. The use of the word "substantially" suggests an intent to impart flexibility into a determination of the veterans overall employability, whereas a requirement that the veteran prove 100 percent unemployability leaves no flexibility. While the term "substantially gainful occupation" may not set a clear numerical standard for determining TDIU, it does indicate an amount less than 100 percent.

Having concluded that proving inability to maintain "substantially gainful occupation" does not require proving 100 percent unemployability, we remand to the Court of Appeals for Veterans Claims for a determination of Roberson's eligibility for TDIU in accordance with this opinion.

## CONCLUSION

We conclude that the Court of Appeals for Veterans claims erred in holding that Roberson failed to make a claim for TDIU, and erred in applying an incorrect standard for TDIU.

*REVERSED and REMANDED.*