﻿Citation Nr: 19172616
Decision Date: 09/18/19 Archive Date: 09/18/19

DOCKET NO. 19-20 104
DATE: September 18, 2019

ORDER

An effective date earlier than December 10, 2014, for the grant of service connection for radiculopathy of the left lower extremity is denied.

An initial rating higher than 20 percent for radiculopathy of the left lower extremity is denied. 

A total disability rating based on individual unemployability (TDIU) is granted, subject to the regulations governing the payment of monetary awards.

FINDINGS OF FACT

1. Service connection was granted for radiculopathy of the left lower extremity effective December 10, 2014, the day an increased rating claim for a low back disability was received.

2. The level of the Veteran’s radiculopathy of the left lower extremity has not more nearly approximated moderately severe.

3. The Veteran’s service-connected disabilities include posttraumatic stress disorder (PTSD) and adjustment disorder (rated 70 percent disabling prior to August 1, 2016, and 50 percent disabling thereafter); radiculopathy of the left lower extremity (rated 20 percent disabling); low back disability (rated 10 percent disabling); left knee meniscus injury with hyperextension (rated 10 percent disabling); and eczema (rated noncompensably disabling). His combined evaluation for compensation is 80 percent prior to August 1, 2016, and 70 percent thereafter. 

4. The evidence is at least evenly balanced as to whether the Veteran’s service-connected disabilities precluded him from securing and following substantially gainful employment consistent with his education and occupational experience.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than December 10, 2014, for the grant of service connection for radiculopathy of the left lower extremity are not met. 38 U.S.C. §§ 5110(a), 7105(d)(3); 38 C.F.R. §§ 3.104, 3.155 (in effect prior to March 24, 2015), 3.156, 3.400, 20.302, 20.1103.

2. The criteria for an initial rating higher than 20 percent for radiculopathy of the left lower extremity are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 8520.

3. With reasonable doubt resolved in favor of the Veteran, the criteria for a TDIU are met. 38 U.S.C. § 1155, 5107, 5110; 38 C.F.R. §§ 4.1-4.7, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 2003 to October 2006 and September 2008 to October 2008.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a May 2015 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). In that decision, the RO, in pertinent part, granted service connection for radiculopathy of the left lower extremity and assigned a 20 percent rating effective December 10, 2014. The Veteran timely disagreed with the initial assigned rating and the effective date of the grant of service connection for radiculopathy left lower extremity.

The issue of entitlement to a TDIU has been raised as part and parcel to the Veteran’s claim for a higher initial rating for radiculopathy of the left lower extremity. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Notably, in a March 2014 rating decision, the RO denied entitlement to a TDIU. In a March 2019 Board remand, pertaining to other issues that are not before the Board at this, it remanded the issue of entitlement to a TDIU for further development. Nevertheless, the evidence raises the question whether the Veteran is able to obtain or sustain gainful employment due to his service-connected radiculopathy of the left lower extremity and therefore will be addressed herein. 

1. An effective date earlier than December 10, 2014, for the grant of service connection for radiculopathy left lower extremity.

Generally, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

The effective date for an award of disability compensation based on an original claim for direct service connection is the day following separation from active service or the date entitlement arose if a claim is received within one year after separation from service. Otherwise, the effective date is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(b)(1); 38 C.F.R. § 3.400(b)(2)(i).

VA amended its adjudication regulations on March 24, 2015, to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015. As the claim in this case was filed prior to that date, the amendments are not applicable in this instance and the regulations in effect prior to March 24, 2015, will be applied in this case.

Under the former legal authority, any communication or action, indicating an intent to apply for one or more benefits under laws administered by VA, from a veteran or his representative, may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the veteran, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(a) (in effect prior to March 24, 2015).

There is no set form that an informal written claim must take. All that is required is that the communication indicates an intent to apply for one or more benefits under the laws administered by VA, and identify the benefits sought. Rodriguez v. West, 189 F.3d 1351 (1999).

The Veteran contends that he is entitled to an effective date prior to December 10, 2014, for the grant of service connection for radiculopathy of the left lower extremity. For the following reasons, an effective date earlier than December 10, 2014, for the award of service connection for radiculopathy of the left lower extremity is not warranted.

On December 10, 2014, the Veteran’s claim for an increased rating for the low back was received. See VA 21-0820 report of general information dated December 2014. 

In a May 2015 rating decision, the RO, in pertinent part, granted service connection for radiculopathy of the left lower extremity, as the RO found that the radiculopathy of the left lower extremity is related to his service-connected lower back disability. The RO assigned the effective date of December 10, 2014, for the grant of service connection for radiculopathy of the left lower extremity as it was the date Veteran’s claim for an increased rating for the low back was received. In March 2016, the Veteran timely disagreed with the effective date of the grant of service connection for radiculopathy of the left lower extremity.

Although the Veteran may have experienced lower left extremity radiculopathy prior to December 10, 2014, which he has not specifically asserted, he did not file an increased rating claim for his low back disability until December 10, 2014. Neither the Veteran nor his attorney have presented any specific argument as to why an earlier effective date is warranted for the award of service connection for radiculopathy of the left lower extremity.

Accordingly, the appeal for an effective date earlier than December 10, 2014, for the grant of service connection for radiculopathy of the left lower extremity is denied. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

Higher Initial Rating

Disability evaluations are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Rating Schedule. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. 

2. An initial rating higher than 20 percent for radiculopathy of the left lower extremity. 

The Veteran’s radiculopathy of the left lower extremity is rated 20 percent disabling under 38 C.F.R. § 4.124a, DC 8520. 

Under DC 8520, a maximum schedular rating of 80 percent is awarded for complete paralysis of the sciatic nerve. With complete paralysis, the foot dangles and drops, there is no active movement possible of muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. When there is incomplete paralysis, a 60 percent rating is in order for severe disability with marked muscular atrophy. Moderately severe incomplete paralysis warrants a 40 percent evaluation, and moderate incomplete paralysis warrants a 20 percent rating. See 38 C.F.R. § 4.124a, DC 8520.

The words “moderate” and “severe” are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just.” See 38 C.F.R. § 4.6 (2018). The Board observes that “moderate” is generally defined as “of average or medium quality, amount, scope, range, etc.” See Webster’s New World Dictionary, Third College Edition 871. “Severe” is generally defined as “of a great degree: serious.” See Webster’s Ninth New Collegiate Dictionary (1990) 1078.

The term “incomplete paralysis,” with peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to the partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. See 38 C.F.R. § 4.124a, DCs 8510-8730 (2018).

In February 2015, the Veteran was afforded a VA examination. He reported moderate left lower extremity intermittent pain. Upon physical examination, muscle strength testing and deep tendon reflexes were normal. There was no muscle atrophy. Sensory examination for sensation to light touch was normal. The examiner found that there was moderate left lower extremity radiculopathy. The VA examiner indicated that the Veteran’s low back disability impacts his ability to work, as he has pain with prolonged standing or sitting and he is limited from carrying no more than 10 pounds. 

In January 2019, the Veteran was afforded a VA examination. He reported that he experiences left leg numbness with prolonged sitting. He indicated that he has mild left lower extremity numbness. Upon physical examination, muscle strength testing and deep tendon reflexes were normal. Sensory examination for sensation to light touch was normal. The examiner indicated that there was mild left radiculopathy of the left lower extremity. The VA examiner indicated that the Veteran’s low back disability impacts his ability to work, as he is unable to perform strenuous physical labor.

For the following reasons, an initial rating higher than 20 percent for radiculopathy of the left lower extremity is not warranted. 

The Veteran’s symptoms of radiculopathy of the left lower extremity more nearly approximate moderate symptomology. The Veteran’s left lower extremity symptomatology is wholly sensory with pain and numbness.

The Veteran’s symptoms of radiculopathy of the right and left lower extremities have not more nearly approximated moderately severe as contemplated in the next higher rating, 40 percent rating, under DC 8520. Throughout the appeal period muscle strength and reflex testing of the left lower extremity were normal. There was no muscle atrophy and sensation to light touch was normal. The Veteran characterized his numbness in the left lower extremity as mild.

Therefore, an initial rating higher than 20 percent for radiculopathy of the left lower extremity under DC 8520 is not warranted. The benefit-of-the-doubt doctrine is thus not for application in this regard. 38 U.S.C.§ 5107(b); 38 C.F.R. § 4.3.

TDIU

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities; provided that, if there is only one such disability, this disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a) (2017). For purposes of one 60 percent disability or one 40 percent disability in combination, disabilities of a common etiology or from a single accident are considered to be one disability. Id. 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Id. Factors such as employment history, as well as educational and vocational attainments, are for consideration. Id. For VA purposes, the term “unemployability” is synonymous with an inability to secure and follow a substantially gainful occupation. VAOPGCPREC 75-91; 57 Fed. Reg. 2317 (1992). The word “substantially” suggests an intent to impart flexibility into a determination of overall employability, as opposed to requiring the appellant to prove that he is 100 percent unemployable. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Here, the Veteran asserts that he is unable to secure or obtain substantially gainful occupation due to his service-connected lower back disability, PTSD and adjustment disorder, and left knee disability. See Veteran’s Application for Increased Compensation Based on Unemployability (VA Form 21-8940) dated October 2013.

The Veteran’s service-connected disabilities include posttraumatic stress disorder (PTSD) and adjustment disorder (rated 70 percent disabling prior to August 1, 2016, and 50 percent disabling thereafter); radiculopathy of the left lower extremity (rated 20 percent disabling); low back disability (rated 10 percent disabling); left knee meniscus injury with hyperextension (rated 10 percent disabling); and eczema (rated noncompensably disabling). His combined evaluation for compensation is 80 percent prior to August 1, 2016, and 70 percent thereafter.

In this case, the Veteran has two or more disabilities with a combined rating of at least 70 percent with one disability rated at least 40 percent. Therefore, the threshold criteria for consideration of a TDIU under 38 C.F.R. § 4.16(a) are met. 

The evidence reflects that the Veteran has been unemployed since May 2013. See Veteran’s Application for Increased Compensation Based on Unemployability (VA Form 21-8940) dated October 2013. He was previously employed at a Walmart distribution center in 2007; employed as an artillery representative in 2008; worked at a security company from 2009 to 2012; a driver from May 2012 to January 2013; and employed as a general labor and security guard in May 2013. Id. 

The Veteran has a high school degree and he has indicated that he was enrolled in a mechanic school in August 2013; however, he has found it “difficult to continue.” Id. 

As to the Veteran’s service-connected low back and left knee disabilities, the evidence includes the Veteran reports that he has low back and left knee pain and that he has pain on ranges of motion of the lumbar spine and left knee. He indicates that he experiences functional loss and functional impairment due to his low back and left knee disabilities, as he has pain with activity and that he is unable to walk or stand for prolonged periods. See VA back examination reports dated February 2015 and May 2015. He has limited ranges of motion of the lumbar spine and left knee. 

The February 2015 VA examiner found that the Veteran’s low back disability impacts his ability to work, as he has pain with prolonged sitting or standing and he has pain upon flexion, extension, and weightbearing, and he is unable to carry more than 10 pounds. Similarly, the May 2015 VA examiner found that the Veteran’s left knee disability impacts his ability to perform occupational tasks (such as standing, walking, lifting, and sitting) because he is unable to stand or walk for prolonged periods. 

In a July 2017 residual functional capacity evaluation report, S.W., M.D., indicated that the Veteran is unable to sit, stand, or walk for no more than 2 hours or carry more than 10 pounds due to his service-connected disabilities. S.W., M.D., found that the Veteran would not be able to maintain substantially gainful employment due to his service-connected disabilities. 

With respect to the Veteran’s service-connected PTSD and adjustment disorder, the May 2015 and December 2015 VA examiners found that the Veteran’s service-connected psychiatric disorder causes occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although he could generally function satisfactorily, with normal routine behavior, self-care and conversation. During a December 2015 VA examination, he reported symptoms that included anxiety, disturbances of motivation and mood, difficulty in adapting to stressful circumstances, including work or a worklike setting, and irritability. During a May 2017 examination, the Veteran reported that he is easily irritated and during periods of irritability he yells at others. He indicated that he spends most of his time alone in his home. 

As to all of the Veteran’s service-connected disabilities, in a December 2017 private opinion, H.S., M.D., reviewed the claims file and opined that the Veteran is unable to maintain substantially gainful employment due to his service-connected disabilities. In support of the opinion, H.S., M.D., cited to the relevant medical evidence that discussed his physical limitations due to his service-connected disabilities. 

For the following reasons, a TDIU is warranted.

In sum, the evidence demonstrates that the Veteran’s service-connected low back and left knee disabilities physically restricted his ability to stand, sit, or walk for prolonged periods due to pain and limited ranges of motion. Additionally, his service-connected psychiatric disorder symptoms have manifested by outbursts of irritability and difficulty in adapting to stressful circumstances, including work or a worklike setting. He has a limited educational history, and his employment history mostly pertains to physical type labor that involve sitting, standing, or bending movements. Therefore, the evidence reflects that the functional limitations caused by the Veteran’s service-connected disabilities preclude gainful employment consistent with his education and occupational experience; thus, a TDIU is warranted.

 

 

JAMES L. MARCH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Castillo, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.