# United States Court of Appeals for the Federal Circuit

———————————

**ALEXANDRA M. JACKSON,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————

2024-2135

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 22-3528, Chief Judge Michael P. Allen, Judge Grant Jaquith, Judge Scott Laurer.

———————————

Decided:   June 26, 2026

———————————

ZACHARY STOLZ, Chisholm Chisholm & Kilpatrick, Providence, RI, argued for claimant-appellant. Also represented by AMY F. ODOM.

NELSON KUAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CLAUDIA BURKE, PATRICIA M. MCCARTHY, BRETT SHUMATE; MEGHAN ALPHONSO, CHRISTA A. SHRIBER, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

––––––––––––––––––

Before REYNA, SCHALL, and CUNNINGHAM, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Alexandra M. Jackson is an attorney.  She represented veteran John A. Lovier, Jr. before the Department of Veterans Affairs ("VA").  She now appeals the June 25, 2024 decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") that affirmed the May 22, 2022 decision of the Board of Veterans' Appeals ("Board") denying her request for attorney's fees arising out of her representation of Mr. Lovier.  *Jackson v. McDonough*, 37 Vet. App. 277 (2024), J.A. 2–36.  For the reasons set forth below, we affirm.

BACKGROUND

I

Relevant to the issue on appeal is an understanding of (1) the statutory scheme relating to the VA's administrative appeals system and (2) the statutory scheme relating to the payment of attorney's fees for work performed during the administrative appeals process.  Accordingly, before turning to the facts, we address these matters.

A

In 2017, Congress enacted the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA") to reform the VA's existing administrative appeals system, which is often referred to as the "legacy system."  *See* Pub. L. No. 115-55, 131 Stat. 1105 (codified at scattered sections of 38 U.S.C.); *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1118 (Fed. Cir. 2021) ("*MVA*").  Under the legacy system, a veteran claiming disability benefits had one primary way to seek administrative review of an unfavorable initial decision by the VA.  A claimant initiated an appeal by filing a notice of disagreement ("NOD") with

respect to the decision of the agency of original jurisdiction ("AOJ"), in essence the relevant VA Regional Office. *See generally* 38 U.S.C. § 7105 (2012). Then, after various steps, the claimant could have his or her claim reviewed by the Board. *See id.*; *see also id.* § 7104 (1996).

Under the AMA, however, claimants have multiple avenues for seeking review after an unfavorable initial decision. *See* 38 U.S.C. § 5104C (2018). If it is within one year after the issuance of the unfavorable initial decision, § 5104C(a) provides three procedural options for a claimant: (1) to file a supplemental claim based on additional evidence; (2) to request a higher-level review within the VA based on the same evidentiary record; or (3) to file an NOD to directly appeal to the Board. *MVA*, 7 F.4th at 1117, 1119. Under 38 U.S.C. § 5104C(b), if it has been more than one year since the unfavorable initial decision, a claimant may file a supplemental claim. *Id.* at 1119–20. Both § 5104C(a) and (b) state that the filing of supplemental claims by claimants is "under [§] 5108" of Title 38. Post-AMA, § 5108 is titled "Supplemental claims" and provides, in pertinent part:

> If new and relevant evidence is presented or secured with respect to a supplemental claim, the Secretary shall readjudicate the claim taking into consideration all of the evidence of record.

38 U.S.C. § 5108(a) (2018).[1] Finally, the AMA defined "supplemental claim" as follows:

---

[1]    Prior to the AMA, § 5108 was titled "Reopening disallowed claims" and provided that, "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108 (1991).

The term "supplemental claim" means a claim for benefits under laws administered by the Secretary filed by a claimant who had previously filed a claim for the same or similar benefits on the same or similar basis.

38 U.S.C. § 101(36) (2018).  We consider next the statutory scheme relating to the payment of attorney's fees.

B

In 1988, Congress enacted the Veterans' Judicial Review Act ("VJRA") to allow, for the first time, judicial review of VA decisions.  Congress also enacted 38 U.S.C. § 5904(c)(1) (formerly 38 U.S.C. § 3404(c)(1)) to relax existing limitations on the payment of attorney's fees.  *MVA*, 7 F.4th at 1135 (citing H.R. Rep. No. 100-963, at 16, 28; S. Rep. No. 100-418, at 63–64).  When first enacted, § 5904(c)(1)'s predecessor permitted attorney's fees to be charged only after "the [Board] first ma[de] a final decision in the case."  *Id.* (citing 38 U.S.C. § 3404(c)(1) (1988)).  In 2006, Congress amended § 5904(c)(1) to shift the triggering event for allowing paid representation from a final Board decision to when "a[n NOD] is filed with respect to the case."  *Id.* at 1136 (citing 38 U.S.C. § 5904(c)(1) (2006)).  Subsequently, the AMA further expanded the availability of fees for attorneys representing veteran claimants before the VA.  Under the AMA, pursuant to 38 U.S.C. § 5904(c)(1), attorneys can collect fees for work performed after notice of the AOJ's initial decision with respect to the case.  *Compare* 38 U.S.C. § 5904(c)(1) (2012), *with* 38 U.S.C. § 5904(c)(1) (2018).  In its present form, and as relevant to this case, the statute provides, in pertinent part, as follows:

[I]n connection with a proceeding before the [VA] with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which

> a claimant is provided notice of the [AOJ]'s initial decision under [§] 5104 of this title with respect to the case.

38 U.S.C. § 5904(c)(1) (2018).  With the relevant statutory background in hand, we turn now to the facts relating to Ms. Jackson's claim for attorney's fees.

## II

Ms. Jackson's client, Mr. Lovier,[2] served in the United States Army from February to June 1991 and in the United States Navy from March 2004 to April 2007.  In April 2007, Mr. Lovier filed a claim for service connection for a bilateral hip disability.  The VA granted him service connection with a 0% rating in March 2008.  J.A. 4.  In November 2009, the VA increased Mr. Lovier's rating to 10% for both hips, effective as of his original April 2007 filing date.  Mr. Lovier continued to pursue a higher rating for both of his hips, and the Board remanded his claim in September 2013 and again in November 2017.  *Id.*  In January 2018, Ms. Jackson took over representing Mr. Lovier.  *Id.* & n.15.  The Board ultimately denied Mr. Lovier's claim for a higher initial rating for his left hip in December 2018.  J.A. 4–5, 59–60, 69–70.[3]  Mr. Lovier did not appeal that decision, so the December 2018 rating decision for his left hip became final.  J.A. 5; *see* 38 U.S.C. § 7105(c) (2018).

---

[2]    Although the record reflects that Ms. Jackson's client served as a physician specializing in obstetrics and gynecology, J.A. 42–43, before us Ms. Jackson refers to her client as Mr. Lovier, as does the Secretary.  The Veterans Court also referred to him as Mr. Lovier.  We follow that approach.

[3]    Mr. Lovier underwent a right total hip replacement in May 2015 and thus his rating by the VA with respect to his right hip was considered separately and is not at issue in this appeal.  J.A. 65, 67–69.

In February 2021, Mr. Lovier had surgery to replace his left hip. J.A. 5; J.A. 75. Subsequently, in September 2021, Ms. Jackson assisted Mr. Lovier in filing an Application for Disability Compensation and Related Compensation Benefits form. J.A. 5. On December 27, 2021, the VA granted a 100% rating for Mr. Lovier's left hip, effective from February to August 2021, based on his hip replacement, and a 30% rating for the period thereafter. J.A. 79–82. This ruling resulted in an award of $16,264.53 of past-due benefits to Mr. Lovier. J.A. 5. In January 2022, with the assistance of Ms. Jackson, Mr. Lovier appealed his hip ratings to the Board, where he requested a hearing. J.A. 84.[4]

Because Mr. Lovier had previously filed a direct-pay fee agreement requesting direct payment of 20% of his award of past-due benefits to his attorney and because he had appointed Ms. Jackson as his counsel, the VA considered whether Ms. Jackson should be paid fees from Mr. Lovier's $16,264.53 award. J.A. 85–86; *see* 38 C.F.R. § 14.636(g)–(i). In a decision dated December 29, 2021, i.e., before Mr. Lovier filed his January 2022 Board appeal noted above, the VA concluded that the award "warrant[ed] no direct payment of fees" because the "VA never received a qualifying request to review this decision." J.A. 85–86.

When it said that it had not received "a qualifying request to review this decision," the VA was stating that Ms. Jackson was not entitled to fees because, under 38 U.S.C. § 5904(c)(1), she could only receive fees for legal work performed *after* the December 27, 2021 rating decision, and the VA had not received a request for fees for legal work performed after that decision. J.A. 86; *see* J.A. 5. Thus, in the VA's view, Ms. Jackson was not owed fees for work

---

[4]    Mr. Lovier's appeal was pending as of the filing of the Secretary's brief in this case in November 2024. Appellee's Br. 9.

performed *prior to* December 27, 2021. Ms. Jackson filed an NOD with respect to the December 29, 2021 decision. The Board's May 2022 decision followed.

In its May 2022 decision, the Board declined to award Ms. Jackson attorney's fees. J.A. 89–92. The Board stated that the December 2021 rating decision granting Mr. Lovier benefits was "an initial decision on an increased rating claim" and therefore was "the initial decision in th[e] matter." J.A. 92. Since, as just noted, Ms. Jackson had not sought attorney's fees for work performed after the December 2021 rating decision ("the initial decision in th[e] matter"), however, the Board reasoned that Ms. Jackson was not entitled to fees under § 5904(c)(1). *Id.* (citing 38 C.F.R. § 14.636(c)(1)(i), an invalidated regulation).[5]

---

[5] Like 38 U.S.C. § 5904(c)(1), 38 C.F.R. § 14.636(c)(1)(i) provided for attorney's fees after an AOJ issued notice of an initial decision on a claim. The regulation also provided, however, for different treatment for supplemental claims, based on whether they were filed within one year of a prior decision. That is, for a supplemental claim continuously pursued under § 5104C(a), an attorney could charge for fees under § 14.636(c)(1)(i). But, for a supplemental claim that was not continuously pursued within one year of a prior decision, fees could only be charged for work performed after "an initial decision on [the] supplemental claim" itself. 38 C.F.R. § 14.636(c)(1)(i).

*MVA* involved several rulemaking challenges under 38 U.S.C. § 502 to VA regulations, including § 14.636(c)(1)(i). In *MVA*, this court invalidated the regulation, concluding that "§ 14.636(c)(1)(i)'s differential treatment of § 5104C(b) supplemental claims clearly contravenes § 5904(c)(1)'s requirement that paid representation be available for all forms of administrative review under the AMA." 7 F.4th at 1139–41.

### III

On appeal to the Veterans Court, Ms. Jackson argued that she was entitled to attorney's fees under 38 U.S.C. § 5904(c)(1) because she provided legal services after the AOJ's "initial decision . . . with respect to the case." Appellant's Br. 6, *Jackson v. Collins*, No. 22-3528 (Vet. App. Dec. 22, 2022) (quoting 38 U.S.C. § 5904(c)(1)). In making this argument, she contended that the "initial decision . . . with respect to the case" pursuant to § 5904(c)(1) was the March 2008 rating decision noted above, not the December 2021 rating decision, as the Board determined. *Id.* at 16. In asserting that the "initial decision . . . with respect to the case" was the March 2008 rating decision, Ms. Jackson sought to have the work she did in connection with Mr. Lovier's September 2021 submission (which was subsequent to the March 2008 rating decision but prior to the AOJ's December 2021 rating decision) be treated as work performed in connection with an AMA supplemental claim. According to Ms. Jackson, Mr. Lovier's September 2021 submission was not the initial claim, but rather a supplemental claim under the AMA as defined in 38 U.S.C. § 101(36) because it was "a claim for benefits . . . filed by a claimant who had previously," in March of 2008, "filed a claim for the same or similar benefits on the same or similar basis." *See id.* at 7. In Ms. Jackson's view, it therefore qualified for filing under 38 U.S.C. § 5104C(b) and thus made her eligible for attorney's fees under 38 U.S.C. § 5904(c)(1).

The Veterans Court rejected Ms. Jackson's arguments. According to the Veterans Court, prior to the AMA, courts interpreted the phrase "with respect to the case" in 38 U.S.C. § 5904(c)(1) such that a subsequent claim for an increased rating was a new claim and part of a different "case" than the initial claim. J.A. 7–10. The court rejected Ms. Jackson's argument that 38 U.S.C. § 101(36)'s definition of "supplemental claim" broadened the meaning of "with respect to the case" in § 5904(c)(1) to encompass later-filed claims for increased ratings like Mr. Lovier's

September 2021 submission.[6] J.A. 15–20. The court also stated that Mr. Lovier's September 2021 claim requested a higher rating and so was "distinct" from his April 2007 claim. It therefore was "a request for a different benefit that wasn't the focus of the first claim." *Id.* Lastly, the court stated that "[t]he basis for the claims was distinct." *Id.* This was so because "[g]iven the factual changes—Mr. Lovier's hip surgery—VA's decision in September 2021 wasn't on the same or similar basis from the last time VA assessed his hip rating." *Id.*

In its decision, the Veterans Court relied on *Fenderson v. West*, 12 Vet. App. 119, 125 (1999), as holding that "[a] claim for an increased rating is a new claim," and the court stated that it "presume[d] Congress knew" of this caselaw when it enacted the AMA. J.A. 18. On this basis, the Veterans Court concluded that Ms. Jackson had "failed to show that [its] understanding of the phrase 'with respect to the case' under § 5904(c)(1) change[d] as a result of Congress creating the supplemental claim" in the AMA. J.A. 21. Therefore, the court reasoned, its decision in *Cameron v. Shinseki*, 26 Vet. App. 109, 116 (2012), that a claim for an increased rating isn't the same "case" as the initial claim for service connection, "answer[ed] the legal question under the AMA, much as it did under the legacy system." J.A. 21. Having concluded that Mr. Lovier's September 2021 claim was not a claim "with respect to" the same "case" as his April 2007 claim under 38 U.S.C. § 5904(c)(1), the court affirmed the decision of the Board. J.A. 21–23. The court said that the Board arrived at the correct legal outcome, even though the Board's decision "ideally wouldn't have

---

6 As seen above, § 101(36) defines a "supplemental claim" as "a claim for benefits under laws administered by the Secretary filed by a claimant who had previously filed a claim for the same or similar benefits on the same or similar basis." 38 U.S.C. § 101(36).

cited 38 C.F.R. § 14.636(c)(1)(i)," which, as noted, our court invalidated in *MVA*.  J.A. 22.

Judge Jaquith dissented.  According to Judge Jaquith, Mr. Lovier's September 2021 claim satisfied the statutory definition of a supplemental claim under 38 U.S.C. § 101(36) since it was a claim for the exact same benefit (disability compensation) and on a similar basis (the veteran's left hip condition) as asserted in Mr. Lovier's April 2007 claim.  J.A. 27–29.

## DISCUSSION

### I

We have jurisdiction to decide an appeal from the Veterans Court insofar as it presents a challenge to the court's decision regarding a rule of law that the court relied on, including a decision about the interpretation or validity of any statute or regulation.  38 U.S.C. § 7292(a), (d)(1).  We have jurisdiction over Ms. Jackson's appeal because it turns on issues of statutory interpretation.  We decide legal issues, including questions of statutory interpretation, *de novo*.  *Blubaugh v. McDonald*, 773 F.3d 1310, 1312 (Fed. Cir. 2014).

### II

Ms. Jackson makes two arguments on appeal.

First, she contends that the definition of "supplemental claim" in 38 U.S.C. § 101(36) "plainly includes" requests for increased compensation based on an already service-connected disability.  Appellant's Br. 5.  Ms. Jackson asserts that this understanding of the meaning of § 101(36) is supported by changes made by the AMA to 38 U.S.C. §§ 5103 and 5110.  *Id.* at 18–23.[7]  Accordingly, and because in *MVA*

---

[7]    Specifically, the AMA removed the terms "a claim for reopening a prior decision on a claim" and "claim for an

our court held that "supplemental claims belong to the same 'case' as the initial decision being reviewed, regardless of when they are filed," Ms. Jackson argues that we should reverse the Veterans Court's holding that she was not entitled to fees under § 5904(c)(1).  *Id.* at 8 (quoting *MVA*, 7 F.4th at 1139).

Ms. Jackson's second argument is that, even if Mr. Lovier's request for additional compensation was not a supplemental claim and was instead a new claim, his September 2021 claim was still part of the same "case" as his April 2007 claim under 38 U.S.C. § 5904(c)(1), because both claims pertained to compensation for Mr. Lovier's left hip condition.  Ms. Jackson argues that the Veterans Court erred when it relied on *Cameron*'s meaning of "case," since our court has "taken a broad view of the term" as "encompass[ing] all potential claims *raised by the evidence.*"  *Id.* at 30–31 (quoting *Perciavalle v. McDonough*, 101 F.4th 829, 836 (Fed. Cir. 2024)).

The Secretary responds that, under 38 U.S.C. § 5104C, "supplemental claims" are claims that are either (a) continuously pursued and preserve the original application date, or (b) contest a prior decision.  According to the Secretary, because Mr. Lovier's September 2021 claim was not continuously pursued and did not contest a prior decision, it cannot be a supplemental claim.  Appellee's Br. 18–19.  The Secretary also argues that Mr. Lovier's February 2021 hip surgery means that his September 2021 claim is premised on a different, dissimilar factual basis than his April 2007

---

increase in benefits" and added the term "supplemental claim" in § 5103(a)(2)(B)(i).  *Compare* 38 U.S.C. § 5103(a)(2)(B)(i) (2012), *with* 38 U.S.C. § 5103(a)(2)(B)(i) (2018).  The AMA also replaced the terms "a claim reopened after final adjudication" and "claim for increase" with "supplemental claim" in § 5110(a).  *Compare* 38 U.S.C. § 5110(a) (2012), *with* 38 U.S.C. § 5110(a) (2018).

claim and thus is not a supplemental claim under § 101(36). Appellee's Br. 20.

In response to Ms. Jackson's second argument, the Secretary argues that Congress intended for the settled understanding of the phrase "with respect to the case" in § 5904(c)(1), as set forth in *Cameron*, to continue post-AMA. Appellee's Br. 28. The Secretary also argues that Mr. Lovier's increased rating claim is not part of the same "case" as his initial 2007 claim because it relies on new and different evidence, namely, the evidence of Mr. Lovier's left hip replacement. Appellee's Br. 29–30.

### III

For the reasons that follow, we conclude that Mr. Lovier's September 2021 submission and the resulting December 2021 rating decision were not, for purposes of 38 U.S.C. § 5904(c)(1), part of the same "case" as his April 2007 claim and the resulting March 2008 rating decision. We therefore affirm the decision of the Veterans Court that affirmed the decision of the Board denying Ms. Jackson's application for attorney's fees.

### A

There are several decisions from our court that are relevant to determining whether the legal services Ms. Jackson provided in connection with Mr. Lovier's September 2021 submission were "with respect to the case" for purposes of 38 U.S.C. § 5904(c)(1). The first of these, we believe, is *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001), which was not a case involving attorney's fees. Instead, it addressed the VA's duty to determine what potential claims were made by a veteran's submission. *Id.* at 1384. We explained that, when a veteran submits evidence of a medical disability and makes a claim, the VA "must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of [how] the claim is specifically labeled." *Id.* This duty, we

reasoned, stems from the VA's duty to develop a claim "to its optimum." *Id.* (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998)).

Subsequently, in *Stanley v. Principi*, 283 F.3d 1350 (Fed. Cir. 2002), we addressed the meaning of the "case" in the context of attorney's fees under the previous version of § 5904(c)(1). That version of the statute restricted the availability of attorney's fees to legal services provided after the "first . . . final decision in the case." *Id.* at 1352. The issue in *Stanley* was whether an attorney could collect fees for work he performed on a legacy reopening claim that was filed after a final AOJ decision. We held that the fees were permissible. We reasoned that it was clear from the legislative history of § 5904(c)(1) that the statute was designed to allow attorney's fees in connection with proceedings to reopen a claim on the basis of new and material evidence or clear and unmistakable error ("CUE"), which were then the two "grounds for attack" on a final decision. *Id.* at 1352, 1356–57 (citing 38 U.S.C. §§ 5108, 5109A (2000)). In reaching this decision, we stated that "[t]he reopening proceeding was itself a separate 'case'" and thus the veteran's attorney could obtain fees after the "final decision" in the reopening case. *Id.* at 1358.

In *Carpenter v. Nicholson*, 452 F.3d 1379 (Fed. Cir. 2006), we clarified *Stanley*'s reasoning, explaining that "a veteran's claim based on a specified disability does not become a different 'case' at each stage of the often lengthy and complex proceedings, including remands as well as reopening," and we cited *Roberson*'s "all potential claims raised by the evidence" definition for "the case." *Id.* at 1384; *see MVA*, 7 F.4th at 1141. We stated that, "[i]n the [veteran's] proceedings the degree of disability and the effective date of disability were issues within the same case, for the claim for benefits includes the issues emanating from the disability or injury that led to the claim." *Carpenter*, 452 F.3d at 1384. We also explained, with reference to 38 U.S.C. § 5904(c), that "[t]he statute was designed to

authorize compensation for attorney services rendered after the initial proceedings, undertaken by the veteran, have failed." *Id.*

We applied *Roberson*'s "all potential claims raised by the evidence" understanding of "case" for purposes of attorney's fees in *Jackson (Francis M.) v. Shinseki*, 587 F.3d 1106 (Fed. Cir. 2009). There, we held that a veteran's original claim did not include the requisite evidence to support a total disability based on individual unemployability ("TDIU") claim, so the veteran's attorney's later presentation of a TDIU claim was not part of the veteran's original "case" for purposes of § 5904(c)(1). 587 F.3d at 1109–11.

In *Perciavalle*, we again addressed the meaning of the term "case," this time in the context of determining if an attorney could receive fees for legal work after an NOD, when the veteran's NOD was submitted in October 2006, i.e., prior to the June 20, 2007 effective date of the changes to § 5904(c)(1) permitting fees only for work after submission of an NOD. 101 F.4th at 833–34. We held that a separate NOD filed by the veteran in May 2009 served to invoke the 2006 changes to § 5904(c)(1) (effective June 20, 2007) and render the attorney eligible to receive fees for the veteran's claim because the later NOD was part of the same "case" for which the fees at issue were sought. *Id.* at 838. Significantly, we noted that the Secretary did not argue that the May 2009 NOD concerned conditions not sufficiently evident in the record to have been part of the "case" that included the original claim. *Id.*

Finally, we recently revisited the meaning of "case" as used in § 5904(c)(1) in *Holstein v. Collins*, 166 F.4th 155 (Fed. Cir. 2026). In that case, we affirmed a decision by the Veterans Court concluding that a veteran's PTSD claim was not part of the same "case" under § 5904(c)(1) as a July 2008 claim for the veteran's neck injury. *Id.* at 157, 160. We stated:

> If the evidence underlying the July 2008 NOD had raised a PTSD claim, it is axiomatic that there would have been "some connection" between the two. Therefore, by concluding that no such connection existed, the Veterans Court *necessarily* determined that the evidence before the Board at the time it adjudicated the July 2008 NOD did not raise the PTSD claim, a conclusion entirely consistent with *Jackson*[ *(Francis M.)*]'s evidence-focused construction of the term "case."

*Id.* at 159–60 (citation omitted).

This line of cases makes clear that the scope of the term "case," as used in § 5904(c)(1), is defined by the evidence that is before the VA when it considers a veteran's claim. This was made most clear in *Jackson (Francis M.)*, where we held that the veteran's claim for TDIU, which was not raised by the evidence at the time that the increased benefits claim was raised to the Board, was not part of the original "case." 587 F.3d at 1109–11. This is also evident in our reasoning in *Holstein*, where we looked to what evidence was "*before the Board at the time it adjudicated* the July 2008 NOD," in determining what was the "case." 166 F.4th at 159–60 (emphasis added); *see also Perciavalle*, 101 F.4th at 833–34, 838 (noting that the Secretary did not argue that conditions were not sufficiently evident in the record to have been part of the "case" that included the original claim). And this understanding of "case" tracks the Veterans Court's approach in *Cameron*, which the Veterans Court relied upon when it concluded that Mr. Lovier's claim for an increased rating is not the same "case" as his initial claim for service connection. J.A. 21. In *Cameron*, the Veterans Court read *Carpenter* and *Jackson (Francis M.)* to define "case" to mean "all potential claims raised by the evidence *during the processing of the claim in question.*" 26 Vet. App. at 115–16 (emphasis added), *aff'd*, 561 F. App'x 922 (Fed. Cir. 2014) (nonprecedential).

We agree with the Veterans Court's reasoning and conclude that "case" in § 5904(c)(1) means all the potential claims that could be raised by the evidence before the VA during the processing of the claim in question. *See Jackson (Francis M.)*, 587 F.3d at 1111 ("Because no evidence of [the veteran]'s unemployability was submitted before the Board's July 2000 decision, the 'case' before the Board at that time did not include a claim for TDIU benefits and thus was not a compensable fee under [§] 5904(c)."); *Gumpenberger v. McDonough*, No. 2022-1887, 2024 WL 1252327, at *5–6 (Fed. Cir. Mar. 25, 2024) (nonprecedential) (concluding that an increased traumatic brain injury rating was not raised by the evidence at the time of the veteran's NOD and thus was not part of "the case" for which the attorney could be entitled to fees). We note that, for a veteran who continuously pursues a claim before the VA such that finality never attaches, later in time events related to the appeal may be part of the initial claim—making those events part of the same case. However, that is not the situation in the matter before us now. Mr. Lovier's 2007 submission and the March 2008 rating decision were part of a "case" that ended when Mr. Lovier did not appeal the December 2018 rating decision and it became final. Mr. Lovier's September 2021 submission relied on evidence of a change in circumstances, specifically, an increase in the level of disability that occurred after the record before the Board had closed when the Board rendered its final decision in December 2018: his February 2021 left hip replacement. Mr. Lovier's September 2021 submission and the AOJ's resulting December 2021 rating decision thus were "with respect to [a] case" separate and distinct from the case represented by the earlier April 2007 claim and the resulting March 2008 rating decision. Ms. Jackson's appeal does not present a claim for legal services provided after the December 2021 rating decision. Accordingly, the Veterans Court did not err in ruling that she was not entitled to attorney's fees under § 5904(c)(1).

B

We are also not persuaded by Ms. Jackson's argument that the AMA's creation of the concept of a supplemental claim, *see* 38 U.S.C. §§ 101(36), 5104C(a), (b), changed the meaning of "with respect to the case" in 38 U.S.C. § 5904(c)(1) so that, without qualification, the term "clearly includes requests for increased compensation based on already service-connected conditions." Appellant's Br. 22–23.

The problem is that Ms. Jackson neglects that the AMA requires that supplemental claims not only meet the definition in § 101(36), but also that they be filed "under" § 5108 pursuant to 38 U.S.C. § 5104C(a)(1)(B), (b). Under § 5108, the VA must "readjudicate" a previously filed claim when a claimant files a "supplemental claim" that presents the VA with "new and relevant evidence." 38 U.S.C. § 5108(a). Mr. Lovier's September 2021 claim was a request for a benefit due to a change in circumstances—his left hip replacement—and did not require "readjudicat[ion]" of his April 2007 claim based upon "new and relevant evidence." *See* J.A. 75 (stating "[l]eft total hip replacement" under "claim information"). It therefore was not, under § 5108, a claim "supplemental" to his April 2007 claim.

This result is consistent with our reasoning in *MVA*. *MVA* addressed challenges to certain regulations promulgated to implement the AMA, including 38 C.F.R. § 14.636(c)(1)(i). As noted above, that regulation allowed attorneys to charge fees for supplemental claims continuously pursued within one year of a prior decision under 38 U.S.C. § 5104C(a), but prohibited fees for supplemental claims filed more than a year after the date on which the Board had issued a decision under 38 U.S.C. § 5104C(b). 7 F.4th at 1137. We struck down the regulation as inconsistent with § 5904(c)(1), which does not restrict attorney's

fees arising from a supplemental claim based on the timing of the filing of the supplemental claim. *Id.* at 1138–41.

In reaching our decision in *MVA*, we addressed the Secretary's argument that a § 5104C(b) supplemental claim filed more than a year after a prior decision is not part of the same "case" as the earlier decision. We applied the *Roberson* test and concluded that "[j]ust as a CUE claim belongs to the same 'case' as a veteran's original claim for benefits, . . . so too does a § 5104C(b) supplemental claim seeking the 'same or similar benefits on the same or similar basis' as the original claim" belong to the same "case" under 38 U.S.C. § 5904(c)(1). *Id.* at 1141 (quoting § 101(36)). We stated that this conclusion, and our statement that "[l]ogic dictates that § 5104C(b) supplemental claims, . . . should be construed as part of the same 'case' as the initial AOJ decision being reviewed," supported the conclusion that a supplemental claim must always be part of the same "case" as the original claim. *Id.* at 1138. Here, however, the evidence Mr. Lovier submitted to the VA with his 2021 submission changed the "potential claims raised by the evidence." *See Roberson*, 251 F.3d at 1384. Therefore, the "case" for purposes of § 5904(c)(1) could not be said to be the same case as the case presented by his 2007 claim and the case before the Board during the processing of that claim before it became final in December 2018. We therefore are not persuaded by Ms. Jackson's attempt to shoehorn Mr. Lovier's September 2021 claim into the same "case" as his original April 2007 claim and the subsequent March 2008 rating decision that became final in December 2018 by claiming that his September 2021 claim was a supplemental claim under 38 U.S.C. § 101(36).

C

Finally, we agree with the Veterans Court that the Board's citation to 38 C.F.R. § 14.636(c)(1)(i) was harmless error. Further, having concluded that Mr. Lovier's November 2021 claim was not part of the same "case" as his April

2007 claim, we do not address the challenges brought by Ms. Jackson to the regulatory provisions she alleges are inconsistent with 38 U.S.C. § 101(36), specifically, 38 C.F.R. §§ 3.1(p)(1)(ii) and § 14.636(c)(1)(i).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Veterans Court affirming the decision of the Board denying Ms. Jackson's application for attorney's fees.

### **AFFIRMED**

## COSTS

No costs.